EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARTÍN CLAUDIO SERRANO, acusado y apelante.

*Número:* CR-72-22        *Resuelto:* 29 de octubre de 1974

---

*José M. Sagardía Pérez,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Magda E. Haidar de Martí,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este es un caso penoso. Se trata de un caso de incesto de padre con hija. La defensa no presentó prueba. Levantó algunas cuestiones de derecho y hace unos señalamientos de errores. Ni los unos ni los otros ameritan revocar. El juicio se vio por jurado y el veredicto fue unánime. La prueba de cargo consistió de la declaración de la perjudicada y la del perito médico. El fiscal renunció al testimonio del testigo policía Juan A. Gascot por considerarlo prueba acumulativa. Lo puso a disposición de la defensa. Esta lo entrevistó pero no lo utilizó.

En síntesis, la declaración de la perjudicada puede resumirse como sigue. Tenía 15 años de edad. Vivía en su casa con su padre, su madre y dos hermanos menores que ella. Estudiaba noveno grado. El día de los hechos su padre fue a bus-

carla a la escuela un poco antes de la hora de salida. Le dijo
que la iba a llevar al Centro Médico porque su madre estaba
enferma. Salieron. El padre conducía el automóvil. Cuando
iban de camino ella notó que el padre tomó la carretera de
Cupey y no la del Centro Médico. Le llamó la atención; él dijo
que a su mamá le habían cambiado de médico.

Llegan a un motel. El carro entró al garage, el padre se
bajó y le pagó dinero a un hombre, quien rápidamente bajó
la puerta de metal del garage, la cerró y se fue. Ella se
percató de la situación. Se bajó del vehículo. Trató de abrir la
puerta del garage pero no pudo. Gritó. Luchó por un rato con
su padre quien al fin la venció y la hizo entrar a la habitación.
Le pegó varias veces en la cara para que no gritara más. Le
tapó la boca con una mano. La tumba sobre la cama. Logra
tener relación sexual con ella. No le rompe la ropa; le baja o
le quita los *panties*. El no se quitó el pantalón; se abrió la
cremallera. El acto dura como diez minutos, declaró ella.
Cuando él termina ella se pone de pie y se pone los *panties*. El
se sube la cremallera. Se van. Él la deja cerca de su casa; le
dice que tiene que ir a comprar unas piezas para un camión.
Es mecánico automotriz.

Al salir del motel ella miró para atrás y vio el rótulo. Se
llamaba Montecarlo, declaró. En el viaje de regreso el padre
le dice a ella que no relate a nadie lo sucedido. Ella se lo dice
a la madre. Va al cuartel de la policía. Dice "fuí a la policía de
Hato Rey y me encontré con el policía Gascot y le dije lo
que había pasado." No surge claramente de su declaración si
fue sola al cuartel de la policía o si su madre la acompañó.

Ella declaró que antes de los hechos aquí relatados era
virgen. Sobre este aspecto su declaración no parece ser cierta.
El perito médico Dr. Miguel Angel Oquendo examinó a la
perjudicada siete días después de los hechos. Declaró que en-
contró "signos claros y definitivos de desfloración vaginal no
reciente." Declaró categóricamente que la desfloración no era
reciente pero que no se podía afirmar en forma absoluta la

fecha en que ocurrió. Encontró el "himen lacerado con cicatriz debidamente establecida y vieja, no había signos de trauma reciente." Por lo tanto, no creía que la desfloración había tenido lugar seis o siete días antes. Estimó que la desfloración no tenía menos de un mes de ocurrida, pero que podía tener más tiempo. La perjudicada declaró que el acto sexual se realizó a la fuerza. No sangró.

■ Después de todo, como se sabe, no es un elemento del delito de incesto que la mujer con la cual se cometa sea o no virgen. Art. 275 del Código Penal de 1902, actualmente vigente, 33 L.P.R.A. sec. 1115; y Art. 122 del Código Penal de 1974, 33 L.P.R.A. sec. 4121. La defensa dio importancia a este hecho porque dejó entrever entre sus planteamientos que una posible defensa era que otro hombre había desflorado a la perjudicada y que ésta quería achacarle el hecho a su padre. Si bien comprendemos la reticencia de una joven estudiante, soltera, de 15 años de edad, a admitir públicamente que no es virgen, por otro lado nos parece muy improbable—salvo que hayan unos rencores profundos, que en este caso no surgieron —que quiera imputarle el delito de incesto a su padre. De todas maneras, el jurado no creyó esa versión.

■ A continuación mencionamos y discutimos los señalamientos de errores hechos por la defensa. El primero es en el sentido de que el fiscal incurrió en conducta impropia al mencionar hechos en su teoría que no probó. Las dos manifestaciones del fiscal a que la defensa se refiere en este señalamiento son las siguientes: (a) El fiscal expresó que al llegar la niña a su casa lo primero que hizo fue informar a la madre de lo sucedido; y (b) que el fiscal manifestó que el acusado le había dicho a su hija que no dijera nada porque le iba a pasar algo a ella.

Realmente del interrogatorio directo no surge claramente si lo primero que hizo la niña fue informar a la madre o pedirle dinero para ir al cuartel de la policía. Creídos los hechos esenciales por el juzgador de los mismos, no es de im-

portancia si la niña pidió primero el dinero o si primero informó a su madre. El señalamiento va dirigido a desacreditar la veracidad de la testigo, pero como ya hemos visto, el jurado lo creyó en todo lo esencial. Además, en el directo, a la pág. 37 de la transcripción de evidencia, aparece la testigo diciendo que primero le dijo a su madre lo ocurrido y que después se lo relató a la policía.

En cuanto a que el padre amenazara a la niña, lo que surge es que ella declaró que en el viaje de regreso él le dijo que no se lo dijera a nadie. La testigo declaró que mientras estaban en el motel ella notó que el padre tenía una pistola en el bolsillo; que tuvo temor de "que la sacara." No surge de la prueba que el padre hiciese ningún uso del arma ni que la amenazara con ella. Podemos presumir que dentro de las circunstancias la niña se sintió amenazada. De hecho ella declaró que le pegó varias veces.

▪ En el segundo señalamiento se apunta que el fiscal y el tribunal comentaron el silencio del acusado. El diálogo que tuvo lugar no llega a la categoría que ese error supone. La defensa, en el contrainterrogatorio, cuestionó la castidad de la niña, cosa que, como hemos visto, no es relevante cuando de un delito de incesto se trata. El fiscal objetó la pregunta de la defensa y en su argumentación dijo ". . . Ahora, si el compañero entiende que es propensa a someterse al acto sexual él puede traer esa prueba. La tiene que traer entonces si acaso es admisible esa prueba en su turno no puede traerla ahora en el turno del fiscal." Como puede verse el fiscal no se refería al hecho de que el acusado no había declarado, sino que si había prueba de que la niña era propensa a someterse al acto sexual, ésa era prueba que competía a la defensa traer en su turno y no en el turno del fiscal.

En cuanto al comentario del magistrado la situación es la siguiente. En ausencia del jurado la defensa planteó que el acusado se había sometido a un examen médico tres meses después de ocurridos los hechos y que había dado positivo de

sífilis. La defensa pretendía introducir eso en evidencia para establecer que debido a la relación sexual ocurrida la niña debió haber contraído sífilis. El tribunal resolvió que esa prueba no era admisible por ser demasiado especulativa. Le preguntó a la defensa si iba a presentar alguna otra prueba y la defensa contestó que no. Entonces el juez ordenó llamar al jurado y posteriormente hizo la siguiente explicación:

"En vista de que el Tribunal en ausencia del Jurado declaró con lugar la objeción del Fiscal, la defensa no puede seguir exponiendo la teoría que empezó a exponer ante ustedes. La defensa ha anunciado que no tiene más prueba y que va a someter el caso sin prueba. Entonces en vista de que son las cinco y cuarto de la tarde vamos a recesar hasta el jueves por la mañana porque este Juez tiene una reunión mañana y no podrá estar aquí en el Tribunal y el jueves las partes vendrán preparadas para hacer sus informes al Jurado y el Tribunal transmitirá las instrucciones de ley al Jurado."

■ En el tercer señalamiento se sostiene que erró el tribunal al no permitir determinada prueba que hubiese afectado la credibilidad de la testigo. Se refiere a dos situaciones distintas. La primera tiene lugar cuando la defensa interesa traer a colación que la testigo no era virgen a la fecha de los hechos. Le preguntó si conocía a un tal Benjamín Pizarro. El fiscal objetó y el tribunal lo sostuvo. El juez expresó que tratándose de un delito de incesto no era relevante el si la mujer era virgen o no. Obviamente los elementos del delito son otros.

La segunda situación que bajo este señalamiento apunta la defensa se refiere a la negativa del tribunal al no admitir prueba en el sentido de que el acusado había dado positivo de sífilis tres meses después de los hechos. La prueba era irrelevante y en este caso como en el anterior el tribunal no incidió al no admitirla. Si la testigo había sido contagiada o no por el acusado, no es un dato que pudiese exculparlo.

■ En el cuarto señalamiento se argumenta que la prueba fue insuficiente. Ya hemos hecho una reseña de la misma.

Creída como lo fue por el jurado, la prueba es suficiente para sostener el veredicto de culpabilidad.

Los señalamientos quinto y sexto son en el sentido de que las instrucciones del juez al jurado no fueron adecuadas y de que el apelante no tuvo un juicio imparcial. Tampoco tienen mérito. El apelante insiste en que no se dieron instrucciones sobre acometimiento y agresión grave. No procedían pues el apelante negó los hechos. Tomadas en su conjunto las instrucciones fueron adecuadas. Tampoco hay nada en el récord que demuestre que al apelante no se le concediese un juicio imparcial. Estimamos que no se cometieron los errores señalados.

En nuestra exposición hemos aludido a la víctima como "la perjudicada" pero en realidad en un caso como éste toda la familia es la perjudicada: la víctima que sufrió el ataque en su propia persona, el padre que se arruina y va a presidio; la madre ante cuyos ojos se desintegra la familia y los hermanos menores víctimas también de dicha desintegración.

Nuestro derecho, que es altamente sofisticado en aquellas materias que tocan la propiedad, como la ley de corporaciones, el derecho contributivo, las obligaciones y contratos, los caudales relictos y la ley hipotecaria, es todavía incipiente en esta área de los delitos sexuales. Sólo sabe absolver o condenar, cuando las más de las veces eso no basta porque de eso no se trata. Se trata, en muchos de estos casos, de la complicada siquis del ser humano. Esta clase de delitos no comprende los que se cometen con ánimo ilegal de lucro y mediante la fría y calculada deliberación, como son el tráfico ilegal de drogas, los escalamientos de hogares, de bancos y demás establecimientos comerciales, y tampoco comprende otros delitos, en los cuales no concurre el ánimo ilegal de lucro pero que también se premeditan deliberada y fríamente, como en el caso del asesinato, el incendio malicioso y la colocación de explosivos. Estos delitos sexuales son delitos pasionales, usualmente manifestaciones de mentes enfermas.

El nuevo Código Penal de Puerto Rico, Ley Núm. 115 de 22 de julio de 1974, en su Art. 72, 33 L.P.R.A. sec. 3373, apunta hacia unas soluciones más racionales a estos problemas. Dispone que el convicto de tentativa o consumación de violación, sodomía, incesto, actos lascivos o impúdicos, o exposiciones deshonestas, que hubiere revelado tendencia irreprimida a cometer dichos delitos, será declarado por el tribunal delincuente sexual peligroso y será internado en una institución adecuada para su tratamiento. Desde luego, nos damos cuenta de que estas situaciones no pueden resolverse en el vacío. Mientras el país no tiene suficientes servicios hospitalarios, agua potable, salones de clase, parques, carreteras adecuadas y otros servicios básicos que las personas no delincuentes necesitan, difícilmente se podrá exigir que se dediquen los recursos a atender con primera prioridad a los delincuentes.

Debemos, pues, disponer del caso conforme a la ley vigente. *No habiéndose cometido los errores señalados y siendo la prueba suficiente para sostener la convicción, se sostendrá la misma. Surge de los autos que el apelante fue sentenciado a cumplir de 6 a 10 años de presidio y aparentemente ya ha cumplido cuatro. Puede, bajo la nueva legislación pertinente, solicitar la intervención de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974, 4 L.P.R.A. secs. 1501 y ss.*