El Pueblo de Puerto Rico, apelado, *v.* Justo Torres García, acusado y apelante.

Número: CR-93-82          *Resuelto:* 19 de septiembre de 1994

*Juan Carlos Morales Girona* y *Víctor G. Colón Bernier*, abogados de la parte apelante; *Carlos Lugo Fiol, Procurador General, Reina Colón de Rodríguez, Subprocuradora General,* y *Grisel Hernández Esteves, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En las circunstancias peculiares de este caso, ¿es admisible, como prueba sustantiva, la grabación del testimonio del *testigo no disponible*, agente Sixto Febus Ocasio, pres-

tada en la vista para la determinación de causa probable para el arresto, pocos días antes de su asesinato?

## I

El 6 de marzo de 1992, el agente Febus Ocasio fue asignado a prestar vigilancia en la calle San Antonio, Esq. Badé Pérez, Guayama, lugar señalado en varias querellas anónimas como "punto" en el trasiego de sustancias ilegales, operado por Justo Torres García. Desde temprano condujo al sitio un vehículo confidencial preparado para la actividad de vigilancia —cristales ahumados que no permitían ver su interior— se estacionó y durante, aproximadamente, cuatro (4) horas observó tres (3) transacciones delictivas. Como resultado, Torres García fue arrestado y se ocupó cocaína, marihuana, dinero y prendas.([1])

Una vez arrestado, fue llevado al Tribunal de Distrito, Sala de Patillas (Hon. Manuel Rivera Lebrón, Juez), quien procedió a celebrar la vista de causa probable para el arresto bajo la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Antes de comenzar el desfile de la prueba, su abogado, para "perpetua[r] lo que él dice", al igual que el agente Roberto Silva Delgado, pidieron autorización para grabar la declaración de Febus Ocasio. El juez accedió. El agente Silva Delgado dejó la máquina grabadora en poder de su compañero Febus Ocasio, quien testificó sobre los hechos observados durante su vigilancia. Dicha grabación quedó con el agente Silva Delgado, quien la guardó en su residencia hasta el 28 de marzo de 1992.

Escuchada la prueba, el Juez Rivera Lebrón determinó causa probable para el arresto por infracciones al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24

---

([1]) Su hermano Félix también fue arrestado y encauzado. Hemos optado por omitir las referencias a su persona y trámite, puesto que esta apelación es únicamente de Justo.

L.P.R.A. sec. 2404 —posesión con intención de distribuir— e impuso una fianza.

Las partes quedaron citadas para comparecer a la vista preliminar el 31 de marzo de 1992. Cinco (5) días antes, el agente Febus Ocasio fue emboscado y murió por una herida de bala que le perforó el tórax.

Llamado ese día el caso, el Ministerio Público presentó cuatro (4) testigos, entre ellos el Juez Rivera Lebrón, quien había determinado causa probable para el arresto. Debido a la no disponibilidad del testigo Febus Ocasio, presentó como prueba sustantiva la grabación antes referida. La defensa objetó. El Tribunal de Distrito la admitió a tono con la Regla 64(B)(1) de Evidencia, 32 L.P.R.A. Ap. IV, y determinó que gozaba de suficiente garantía circunstancial de veracidad, exactitud y autenticidad.

El 13 de abril el Ministerio Público acusó a Torres García, en grado de reincidencia, y éste solicitó la desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En esencia, cuestionó la admisibilidad como prueba sustantiva del testimonio de Febus Ocasio en la vista preliminar. Con el beneficio de los argumentos de las partes, la ilustrada sala de instancia (Hon. Jocelyn López Vilanova, Juez), en Resolución documentada de 24 de febrero, sostuvo su admisibilidad. No conforme, Torres García nos solicitó mediante *certiorari* (Caso Núm. CE-92-419) que revocáramos ese decreto. El 28 de *julio*, la Sala de Verano integrada por su Presidente, el Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton denegaron el auto.

Celebrado el juicio, un Jurado lo encontró culpable en dos (2) cargos por infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. El 13 de octubre, el tribunal lo condenó a cuarenta (40) años de presidio en cada caso, concurrentes entre sí.

En su apelación, reproduce su contención de que la grabación no era admisible, se queja de que no se impartieran dos (2) instrucciones especiales al Jurado, aduce insuficiencia de la prueba de cargo y cuestiona que no se autorizara una inspección ocular. Examinémoslo.

## II

El apelante Torres García aduce que admitir la grabación del testimonio del agente Febus Ocasio violó su derecho constitucional a la confrontación de nuestra decisión en *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256 (1983). Argumenta que esa vista inicial es distinta a la vista preliminar. En esta última, "se cita al acusado con no menos de cinco (5) días de anticipación, está presente la figura del Ministerio Público; se entregan declaraciones juradas de los testigos utilizados en dicha vista; es usualmente más prolongada y se tiene hasta el beneficio del informe de la policía. Esta sí es una vista de *carácter* judicial, donde el acusado tiene la oportunidad verdaderamente de carearse con los testigos en su contra". Alegato en apelación, pág. 4. Por el contrario, en la inicial para el arresto "los abogados no damos el máximo ... se notifica al abogado aproximadamente ... es necesario una [scintila] de evidencia ... no profundizamos en el contrainterrogatorio ... no existe el beneficio ni declaraciones juradas de los testigos del pueblo ni el informe de la policía para poder impugnar[lo]". Íd., pág. 5.

Señala que la grabación fue incompleta pues "se detuvo por bastante ratito" al no cambiarse el cassette. Formula como interrogante: ¿Cómo podemos dejar de pensar que en esos quince (15) minutos o más de testimonio del agente fenecido, *no grabados, no pudo haber testimonio exculpatorio a favor del apelante Justo Torres García? No tiene razón.*

# III

■ Ciertamente nuestra Constitución —Art. II, Sec. 11, L.P.R.A., Tomo 1— así como la federal en su Sexta Enmienda, consagran el derecho de todo acusado a carearse con los testigos de cargo, lo cual está vinculado al contrainterrogatorio. *Pueblo v. Ríos Nogueras*, supra; *Pueblo v. Lebrón González*, 113 D.P.R. 81, 97 (1982). El interés tutelado es evitar los procesos criminales mediante deposiciones o declaraciones *ex parte* de testigos ausentes. *Pueblo v. Ríos Nogueras*, supra. Lo *crucial* es la oportunidad de contrainterrogar durante el testimonio anterior, no si efectivamente se contrainterrogó. *Pueblo v. Lebrón González*, supra; *Pueblo v. Ruiz Lebrón*, 111 D.P.R. 435, 441 (1981); E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. 1.

■ La Regla 64(B)(1) de Evidencia, *supra*, gobierna la solución. Declara admisible el "testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento, si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista". Íd.

■ Al respecto se ha señalado que esta regla "es tal vez, la excepción más sólida a la regla de exclusión de prueba de referencia. Se juntan dos factores que unidos justifican, por mucho, la excepción. En primer lugar, el declarante no está disponible como testigo. En segundo lugar, la declaración que se recibe como prueba fue hecha bajo contrainterrogatorio —usualmente hecho por la parte contra la que se ofrece la declaración— u ofrecida como prueba por la parte contra quien luego se presenta bajo la regla, en un procedimiento formal o deposición, y bajo juramento. Lo que falta es el demeanor, en el sentido de que el juzgador

no tuvo oportunidad de apreciar el demeanor del declarante cuando prestó el testimonio anterior. Pero la parte contra la que se ofrece la prueba de referencia de ordinario sí estuvo presente —o pudo haberlo estado— al presentarse el testimonio anterior". Chiesa, *op. cit.*

■ En su obra *Derecho Procesal, op. cit.*, pág. 620, el mismo profesor Chiesa nos da la clave:

> ... [E]l acusado debe haber tenido oportunidad *real* de interrogar o contrainterrogar al declarante .... Si el testigo durante el testimonio anterior, no se deja interrogar o contrainterrogar ampliamente por el acusado, el problema de confrontación continúa muy vivo y no es "final reposo". *Lo mismo vale decir cuando durante el testimonio anterior, el Tribunal restringe el alcance o duración del contrainterrogatorio*, como podría ocurrir en la vista preliminar. *En cuanto a la vista de determinación de causa probable para el arresto, habrá que examinar la oportunidad que tuvo la defensa de interrogar al testigo.* (Énfasis, citas y escolios omitidos y énfasis suplido.)

La interpretación que nos propone el apelante Torres García sobre la jurisprudencia interpretativa de la Regla 64(B)(1) de Evidencia, *supra*, en torno al "testimonio dado como testigo en otra vista", *es restrictiva.* La oportunidad de llevar a cabo el contrainterrogatorio durante el testimonio prestado en una *vista anterior*, repetimos, es la clave. ¿Tuvo el apelante Torres García dicha oportunidad o fue en alguna medida restringido?

■ Conforme la *resolución* de la ilustrada sala de instancia, su abogado aceptó

> ... que tanto la policía como él grabaron la vista. Que no es hasta esta etapa del proceso que se percata que [su] grabadora no le grabó, por lo que no pudo cumplir la orden del Tribunal de elevar ante nos su grabación. Aceptó que el Juez instructor *nunca lo interrumpió en su contrainterrogatorio, que no le puso término, no le instruyó que fuera breve. Aceptó que el Juez puso a su disposición las facilidades del Tribunal para entrevistar a sus clientes.* A pesar de ello, alega no tuvo oportunidad de contrainterrogar porque se limitó a hacer "unas preguntas aclaratorias solamente".

El término "oportunidad" de contrainterrogar que dicta la ley no lo tomamos livianamente. Es este un principio cardinal que emana del derecho a la confrontación que le asiste a éstos, y a todo acusado. Es por ello que este Tribunal ordenó una transcripción de la grabación tomada por el testigo no disponible en la vista de causa probable para el arresto la cual desde la etapa de vista preliminar se encuentra bajo la custodia del Tribunal. Se ordenó al Ministerio Público entregar al Tribunal la grabadora en que dicho agente grabó. Tenemos el beneficio de la transcripción la cual hemos constatado con la grabación. En el análisis de la misma hemos examinado entre otros los siguientes elementos: 1. naturaleza del contrainterrogatorio —tipos de preguntas abiertas y/o sugestivas[;] 2. alcance del contrainterrogatorio y su extensión[;] 3. limitaciones impuestas[; y] 4. limitaciones autoimpuestas.

La transcripción del testigo no disponible consta de veintisiete y media páginas (27 1/2) tamaño legal. Las primeras tres (3) páginas constituyen el examen directo, las veinticuatro y media (24 y 1/2) restantes corresponden al contrainterrogatorio. Contrario a lo alegado, el contrainterrogatorio no se limitó a unas "breves preguntas aclaratorias". *Se le formularon aproximadamente ciento cincuenta (150) preguntas a dicho agente.* Lo primero que solicitó la defensa del Tribunal fue se ordenara al Agente que preparara un *diagrama explicativo del lugar de los hechos.* El Tribunal así lo ordenó solicitando se hiciera con copias, una para el Agente y otra para que permaneciera en el Tribunal. En forma *detallada y pormenorizada* preguntó al Agente sobre el lugar de los hechos, le cuestionó sugestivamente en muchas de sus partes y le confrontó en otras. *El agente describió y narró con lujo de detalles todo lo que se le preguntaba.*

De dicha transcripción se desprende que el testigo no disponible es el que presencia los alegados hechos, inmediatamente transfiere esa información al Agente Roberto Silva mediante radio portátil (walkie talkie) y es este último el que arresta a los acusados.

Considerando lo anterior ordenamos, además, la transcripción del testimonio de dicho agente en la vista de determinación de causa probable para el arresto. *La transcripción revela un extenso contrainterrogatorio y una confrontación con lo que virtiera el agente interventor.*

Ante este cuadro de evidencia incriminatoria, el jurado encontró probado más allá de duda razonable que el apelante cometió el delito imputado. No se encontró el jurado ante una evidencia de breve duración, sino de una extensa en que los testimonios fueron elocuentes y detallados y hubo efectivo

contrainterrogatorio. El finado agente incluso fortaleció su testimonio mediante un croquis, según requerido por la defensa del apelante.

"Para establecer un hecho no se exige aquel grado de prueba, que excluyendo posibilidad de error, produzca absoluta certeza; solo se exige la certeza o convicción moral en un ánimo no prevenido". Regla 10 de Evidencia, 32 L.P.R.A., Ap. IV.

"La expresión clave es aquí certeza o convicción moral, que significa convicción en una conciencia no prejuzgada. Dicho de otro modo, una parte descarga su responsabilidad de probar un hecho persuadiendo al juzgador no prevenido o prejuiciado de que tal hecho ocurrió. De ahí que los tribunales digan que *la ley no exige que un hecho se pruebe con certeza matemática, sino con razonable certeza*". Chiesa, *op. cit.*, pág. 20. (Enfasis suplido).

Lo importante es que la prueba sea suficiente y satisfactoria en derecho. *Pueblo v. Rodríguez Román*, res. en 21 de febrero de 1991. Es especulativa la contención de la defensa de que pudo haber evidencia exculpatoria en los minutos que estuvo detenida la cinta. Ante una abrumadora evidencia inculpatoria es improbable que esos minutos cambiaran drásticamente un cuadro claro y consistente de culpabilidad.

En el caso ante nos el derecho constitucional a la confrontación con testigos adversos fue ejercido ampliamente y sin cortapisas. Fue contando con la evidencia del Ministerio Público y de la defensa que el jurado encontró probados más allá de duda razonable los delitos imputados. No encontramos indicios de pasión, prejuicio, parcialidad o error manifiesto que nos muevan a intervenir con el criterio del juzgador de hechos. *Pueblo v. Adorno Cabrera*, res. en 30 de junio de 1993; *Pueblo v. Rodríguez Román, supra*.

En la vista celebrada para discutir las mociones de desestimación, el Tribunal escuchó la grabación del testimonio prestado en la vista preliminar por el agente Silva. El contrainterrogatorio al cual fue sometido fue sumamente breve y de muchísima menor extensión al cual fue sometido en la vista de determinación de causa probable para el arresto. Prestó testimonio ante este Tribunal el Hon. Manuel Rivera Lebrón, Juez instructor. Este identificó la grabación y las voces que correspondían a las partes y testigos. Atestó, y ello no fue refutado, que cuando se elevó este caso a su consideración el abogado le cursó llamada telefónica solicitándole que no celebrara la vista hasta que él llegara. Que así lo hizo y tuvieron que esperar por el abogado. Que no acostumbra interrumpir a las partes en los exámenes de los testigos. Atestó además, que cuando el testigo no disponible declaraba miraba directamente al abogado. Que

el croquis que preparó el agente lo hizo en una hoja de notas suplida por la defensa. El mismo fue iniciado por el Juez y reconoció su rúbrica.

Se presentó ante este Tribunal el testimonio del agente Roberto Silva y su superior Sargento Martínez de la División de Drogas y Vicios de Guayama. Ello para demostrar la cadena de custodia de la grabación.

Dichos testimonios ilustran al Tribunal que la referida grabación quedó bajo la custodia del Sargento Martínez en la caja fuerte de la División a la cual él solamente tiene acceso. El 31 de marzo de 1991, fecha de la vista preliminar, la entregó al Tribunal, y desde entonces permanece bajo la custodia de éste. (Énfasis suplido.)

Hasta aquí la Resolución. Poco podemos añadir a tan razonado y persuasivo dictamen. La lectura de las transcripciones de la vista de determinación de causa, de la vista en su fondo, de la exposición narrativa y de la prueba documental descartan la contención del apelante Torres García. Su contención de que la parte final del testimonio no grabada pudo ser exculpatorio, no es sólo especulativa, sino carente de toda lógica.

Tampoco tiene razón en cuanto a que la cadena de custodia de dicha grabación no fue establecida, pues permaneció originalmente en poder del agente Silva Negrón, sin especial vigilancia.

No existe controversia de que dicha grabación fue retenida por el agente Silva Negrón en su residencia desde que se celebró la vista hasta que, ante la muerte del agente Febus Ocasio, su supervisor la requirió. El agente Silva Negrón explicó el cuidado que le brindó mientras estuvo en su poder.

Bajo nuestra doctrina establecida en *Pueblo v. Bianchi Álvarez*, 117 D.P.R. 484 (1986), el apelante Torres García no ha demostrado unas situaciones específicas que incidan o debiliten la confiabilidad de la grabación. Las identidades de las personas fueron logradas mediante el testimonio del magistrado que presidió la vista.

# IV

Segundo:
Erró el Honorable Tribunal al negarse a impartir las instrucciones solicitadas por la defensa sobre:
a) casos ocurridos a plena vista—*Pueblo* v. *Dolce*, 105 D.P.R. 422[;]
y b) testimonio estereotipado—*Pueblo* v. *González del Valle*, 102 D.P.R. 374.

Tercero:
Como consecuencia del error anterior, el Jurado fue privado del derecho aplicable al caso de autos, y por consecuencia incidió al condenar al acusado con una prueba flaca y descarnada, sin que el Ministerio Público probara su caso más allá de duda razonable y existiendo duda razonable. Escrito de apelación, págs. 1–2.

Al igual que el Procurador General, examinaremos estos señalamientos en conjunto.

En cuanto a las instrucciones especiales, reiteramos que debe demostrársenos que la instrucción propuesta era correcta, que no se cubrió sustancialmente en las otras instrucciones especiales o generales, y que es pertinente a un punto vital cuya omisión privaría al acusado seriamente de una defensa efectiva. *Pueblo v. Negrón Vélez*, 96 D.P.R. 419 (1968). Se impone un examen integral, no aislado, de las instrucciones impartidas. *Pueblo v. Najul Bez*, 114 D.P.R. 493 (1983); *Pueblo v. Ortiz González*, 111 D.P.R. 408 (1981); *Pueblo v. Claudio Serrano*, 102 D.P.R. 726 (1974). Se presume que fueron adecuadas si el apelante no las eleva con los autos. *Pueblo v. Dones Arroyo*, 106 D.P.R. 303 (1977).

*Esa es la situación en este caso; no fueron elevadas.* No podemos responsablemente determinar el impacto que tuvo ante el Jurado la negativa del Tribunal de impartirlas; menos, aventurarnos a considerarlas fraccionadamente para determinar si hubo error sustancial.

Difícilmente podemos caracterizar la prueba como floja, descarnada, estereotipada, inverosímil o insuficiente.

Coincidimos con el Procurador General en cuanto a que "[d]esgraciadamente, la ola criminal que arropa nuestro país ha surtido en los delincuentes un efecto desafiante ante la autoridad y la sociedad, lo que ha promovido actuaciones delictivas como las imputadas al apelante. No puede hablarse de testimonio estereotipado meramente por tratarse de una transacción a plena luz del día". Informe, pág. 12.

■ No intervendremos con el veredicto del Jurado en "ausencia de [pasión,] prejuicio, parcialidad o error manifiesto ...". *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 129 (1991). Véanse: *Pueblo v. Sánchez Molina*, 134 D.P.R. 577 (1993); *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Cruz Negrón*, 104 D.P.R. 881 (1976).

## V

SÉPTIMO:
Erró el Tribunal Sentenciador al denegar una moción solicitando una inspección ocular del sitio de los hechos, máxime cuando el trasladarse a dicho lugar sería relativamente fácil, y más importante aún, cuando la cuestión medular de este caso dependía del lugar donde se ubicó supuestamente el agente investigador y así determinar si se podía ver y escuchar lo que alegaba en la grabación. Esa inspección además evidenciaría la improbabilidad de que allí ocurriera una transacción a plena luz del día en una calle de intenso tráfico vehicular y de personas. Esta inspección reviste una importancia crucial en este caso por no estar el testigo disponible para ser contrainterrogado. Escritorio de apelación, pág. 3.

■ El señalamiento es inmeritorio. Conceder una inspección ocular cae en el ámbito de la discreción. Procede si se demuestra que habrá de auxiliar al Jurado o al juez a apreciar correctamente la prueba que se proponga desfilar o haya desfilado. *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981); *Pueblo v. Cruz*, 60 D.P.R. 116 (1942).

En el caso de autos, la prueba de cargo estableció con meridiana claridad las características físicas del lugar, en

particular el sitio desde donde lo observó el testigo Febus Ocasio. El análisis integral demuestra que no era imposible —como se sugiere— que pudiera ver las transacciones y oír.

La prueba estableció el lugar desde donde observó el agente y donde se realizaron las transacciones. Incluyó un croquis preparado por dicho agente y varias fotos del lugar y vehículos situados en posiciones similares a los indicados por el agente Febus Ocasio en su declaración. La prueba de cargo demostró que dicho "agente se encontraba tan cerca del 'punto' que podía escuchar lo que allí se hablaba, una inspección ocular no habría añadido elementos de prueba a considerar por el juzgador. De haber merecido crédito al jurado —como mereció— lo establecido por la prueba, dicho foro poseía suficientes elementos de prueba sobre el sitio, para dilucidar y adjudicar los conflictos entre la evidencia de cargo y la defensa". Informe, pág. 14.

Al igual que en *Pueblo v. Lebrón González*, supra, pág. 82, "[e]n el caso de autos, luego de una ponderada reflexión del proceso y las normas legales, sólo se hace cumplida justicia confirmando las sentencias apeladas. Así damos virtualidad al pensamiento moral, místico y jurídico de que '[l]a justicia ... es el único amigo que acompaña al hombre después de la muerte; todo lo demás perece con el cuerpo' ".

*Se dictará la correspondiente sentencia.*

La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente. El Juez Asociado Señor Alonso Alonso concurrió con el resultado sin opinión escrita.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

Estamos conformes con las expresiones hechas por el

Tribunal respecto a la admisibilidad, como prueba sustantiva, de la grabación del testimonio prestado por un testigo no disponible, días antes de su asesinato, en la vista para la determinación de causa probable para el arresto del acusado apelante Justo Torres García.

Sin embargo, creemos importante hacer algunas expresiones relacionadas con la cadena de custodia de dicha grabación y de la grabadora.

En el caso de autos, el agente Silva mantuvo la grabadora y el casete en una gaveta de su casa desde el 6 al 28 de marzo de 1992, es decir, durante veintidós (22) días. Véase la transcripción de la evidencia (T.E.), págs. 200 y 358. Sobre los cuidados que le brindó, el agente Silva testificó que le indicó a su esposa que velara de que sus hijos no tuvieran acceso a la gaveta. Además, señaló que únicamente él utilizaba esa gaveta. T.E., págs. 199–200. Esta situación representa una irregularidad en la cadena de custodia del casete y la grabadora. No es aconsejable, ni constituye una buena práctica, que la Policía permita que los agentes se lleven a sus casas u otros lugares —excepto cuando existan circunstancias extraordinarias tales como inundaciones, terremoto, fuego— efectos que constituyan o puedan constituir evidencia potencial de un caso.

No obstante, consideramos que, bajo los hechos particulares de este caso, debe sostenerse la admisibilidad de la grabación, aun cuando existe una situación irregular en la cadena de custodia. Coincidimos con la opinión mayoritaria de que bajo nuestra doctrina establecida en *Pueblo v. Bianchi Álvarez*, 117 D.P.R. 484 (1986), el apelante Torres García no demostró unas situaciones específicas que incidieran o debilitaran la confiabilidad de la grabación. En dicho caso expresamos:

> No toda interrupción en la cadena de custodia causa la exclusión de la prueba. La barrera de admisibilidad queda salvada cuando la apreciación del juez de la evidencia sobre la custodia es que la condición original del objeto no ha sido sustancialmente alterada o contaminada. Corresponde al jurado, con las

dudas que suscite la impugnación, dar a esta prueba el peso que les merezca. La mera posibilidad de una interrupción de la secuencia no hace la evidencia material inadmisible, sólo plantea una cuestión de peso de la prueba a ser adjudicada por el jurado. (Escolio omitido.) Íd., pág. 495.

En el caso de autos, la identificación de las personas cuyas voces fueron grabadas se logró, con meridiana claridad, mediante el testimonio del magistrado que presidió la vista.

Por todo lo antes expuesto, concurrimos con la opinión mayoritaria.