*855 TEXTO COMPLETO DE LA SENTENCIA
El peticionario, señor Enrico Rivera Torres, nos solicita la revocación de la determinación emitida el 4 de junio de 2002, por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante la misma, dicho Foro declaró sin lugar la moción de supresión de evidencia presentada por el peticionario, quien alegó que la orden de allanamiento que dio base a la ocupación de la evidencia estuvo basada en premisas falsas.
Por los fundamentos que expondremos, expedimos el auto solicitado y revocamos la resolución recurrida.
I
Como resultado del testimonio presentado por el Agente Reinaldo Colón Rivera (Agente Colón), el 28 de julio de 2000 se expidió una orden de allanamiento mediante la cual se ordenó el registro de la residencia de dos niveles, construida en cemento y pintada de color verde, ubicada en la calle Vives #73, Ponce, Puerto Rico, en busca de plantas de marihuana. El Agente Colón se expresó en los siguientes términos:

“Que trabaja para la Policía de Puerto Rico, adscrito a la División de Drogas, Narcóticos y Control Vicios del Area de Ponce.

Que el día 24 de julio de 2000, a las 5:00 pm., recibió una querella de parte del Tnte. Orlando Ortiz Soto 7-4964, Director de la División de Drogas de Ponce, la cual le informó que él en conjunto al Inspector Víctor Rivera, entrevistaron un informante el cual le informó que en la calle Vives #73 de Ponce, residencia de dos plantas, construida en cemento, color verde, la cual ubica frente al estacionamiento Carlos Garay, dicha residencia residen las siguientes personas: un individuo conocido por Walter, de aprox. 54 años, y de 5'8" de estatura, de 180 libras, de tez blanca, pelo negro y usa espejuelos y su hijo c/p Kiko, de aprox. 24 años, 5'7" de estatura aprox., tez blanca, de 175 libras aprox., pelo rubio. También reside un señor quien es el padre de Walter y es de una persona de edad y que una de estas personas es doctor. Que en dicha residencia hay varias plantas de marihuana, de aproximadamente de cinco pies, en unas pailas de pintura, color blanca y dicha residencia es visitada por varias personas que bregan con drogas.

Que el día 25 de julio de 2000, (día feriado), tomó servicios a las 8:00 am., y salió a investigar la querella asignada y llegó al sitio a eso de las 9:00 am. Localizó la residencia de la querella la cual se describe: residencia de dos plantas, de cemento, con balcón en altos y bajos, color verde, con el #73 de la calle Vives, Ponce, P.R. Que mirándola de frente colinda por el lado izquierdo con la oficina de un sicólogo con el #71 y por el lado derecho colinda con una residencia en madera, vieja, con el #48 de la calle Méndez Vigo de Ponce. Frente a la residencia (#73) hay un estacionamiento de carros públicos Carlos Garay, también hay un vehículo color rojo con la tablilla BMK-863, el cual aparece a nombre de Emilio Guzmán Alicea, residente en Ponce. Que luego de coger la descripción, observé que en el balcón de los altos, residencia #73, hay una planta color verde de aprox. 4 pies, la cual no se podía distinguir a simple vista, qué clase de planta era.

Que regresó a la División Drogas de Ponce, a buscar unos binoculares, posteriormente regresó a continuar la investigación, se estacionó en un lugar donde tenía visibilidad con los binoculares hacia el balcón donde se encontraba la planta y pude observar por su experiencia como agente de drogas que se trataba de una planta de marihuana. Que aproximadamente a las 11:15 am., salió bajos de la residencia, un individuo de aprox. 23 a 24 años, 5'7" de estatura, pelo rubio, tez blanca, de 165 libras aprox., vestía pantalón azul corto y t-shirt verde, tenis blancos, éste se retiró hacia en dirección al pueblo de Ponce. Que se retiró del lugar y regresó a la 1:40 pm., y pudo observar que la planta estaba en el mismo lugar. Llegó una guagua marca Rodeo, color negra, tabilla CYM-531, de ésta se bajó un individuo de 27 años aprox., 5'7" de estatura aprox., 180 Ib., tez blanca, pelo rubio, lucía chiva y bigote, éste vestía pantalón azul y una t-shirt color crema, éste entró a la residencia #73 de la calle Vives, a los pocos minutos salió de la residencia, buscó una guitarra en el carro y entró de nuevo a la residencia. Que se retiró del lugar, pedí la relación del vehículo CYM-531, y éste salió a nombre de Emilio J. Dorta 
*856
Martínez, residente en Guaynabo.

Que el día miércoles, 26 de julio de 2000, tomó servicio a las 10:00 am., salió a investigar la querella y pudo observar que la planta no estaba y se retiró del lugar. A las 11:00 am., investigó en las Oficinas del CRIM de Ponce, a nombre de quien aparece la residencia #173 de la calle Vives de Ponce y ésta sale a nombre del. señor Santiago Rivera Romero, catastro número 389-052-289-21-001. Que a las 11:45 am., investigó en la Autoridad de Energía Eléctrica quién es el abonado de la residencia #73 de la Calle Vives de Ponce y aparece como abonado el señor Frankie Rivera Miranda, cuenta Número 051-0060210-001. Que a las 4:30 salí a investigar la querella de la calle Vives #73 de Ponce y observó que en el balcón altos había una planta de marihuana de aprox. 4 pies. Que aproximadamente a las 4:35 pm., llegó a la residencia c/p Cambrelen, persona que ha sido arrestada anteriormente por sustancias controladas, éste llegó en el vehículo Datsun color blanco, tablilla 065-G-752, vestía pantalón azul, una t-shirt roja sin mangas con el #33 en la espalda, éste entró a la residencia #73 de la calle Vives y a los pocos minutos, salió con un individuo de 54 años aprox., 5‘8" de estatura aprox., de aprox. 170 libras, tez blanca, pelo negro, usa espejuelos y vestía mameluco azul, éstos se montaron en el vehículo Datsun y los seguió hasta el Res. Ponce de León, donde los perdió de vista. Que se retiró del lugar con la convicción de que en la residencia ubicada en la calle Vives #73 de Ponce, Puerto Rico, la están utilizando para cultivar y guardar plantas de marihuana. Que pjijdió la relación del vehículo Datsun con tablilla 065-G-752 y aparece a nombre de José A. Cambrelen Santana, residente en Ponce. ”
La orden de allanamiento fue diligenciada ese mismo día, 28 de agosto de 2000, por el Agente William a Vélez Arroyo (Agente Vélez).
El 10 de agosto de 2000, el Agente Vélez suscribió declaración jurada relacionada con el diligenciamiento de la orden de allanamiento expedida el 28 de julio de 2000, expresando:

“Que el día 28 de julio de 2000, en horas de la tarde, el sargento Hilario Marrero Rivera 8-11708, me dio instrucciones de que diligenciara una orden de allanamiento contra la residencia ubicada en la calle Vives #73 de Ponce, Puerto Rico, expedida por el honorable juez Daniel López por infracción a la Ley de Sustancias Controladas de P.R.

Que me dirigí al lugar en unión a varios agentes a diligenciar dicha orden donde me percato que llega a pie una joven trigueña clara, alta, la cual llama para el interior de la residencia, saliendjo] un individuo de pelo castaño, pantalón corto y sin camisa quien resultó ser Enrico M. Rivera Torres, a quienes me le identifiqué como policía dándole conocimiento de la orden de allanamiento y el Sgto. Hilario Marrero Rivera 8-11708 le entregó copia de la misma. Que al entrar a dicha residencia inmediatamente me percato en el área de la sala de una pipa de bambú para fumar marihuana y en el área del comedor sobre la mesa una bolsa plástica transparente con logo de Pitusa, conteniendo en su interior hoja seca de marihuana procediendo yo a poner bajo arresto a la persona antes mencionada, ya que era el único que se encontraba en la residencia y leyéndole las debidas advertencias de ley. Que subo al área de los cuartos donde en una de las habitaciones se ocupó dos cajitas de papel marca Bambú y una pipa plástica para fumar crack, así como también una bolsa plástica transparente con logo de Wal Mart conteniendo en su interior hojas secas de marihuana, una bolsita plástica transparente color amarilla con cierre a presión conteniendo en su interior semillas de marihuana y una envoltura pequeña con papel blanco quemado por uno de sus extremos conteniendo en su interior picadura de marihuana. Que procedo a dirigirme al área del patio donde me percato y ocupo cuatro pailas blancas con tierra y conteniendo cada una de éstas sembradas una mata de marihuana. Que este joven me manifestó al ver la evidencia que se había ocupado, que la pipa que se utilizaba para fumar crack no era de él, indicándole yo que esa evidencia como él había visto, se ocupó en su residencia, manifestando éste: "lo otro es mío, pero esa pipa no", refiriéndose a la pipa que se utiliza para fumar crack.

Que procedí a trasladar a la persona arrestada, al igual que la evidencia, a la División de Drogas y 
*857
Narcóticos de Ponce, donde se le entregó las-advertencias de ley por escrito las cuales firmó y se le realizó por este suscribiente la prueba de campo a la evidencia ocupada la cual arrojó positivo a marihuana siendo debidamente rotulada y depositada en el sobre de evidencia #186142. Que este joven nuevamente, luego de haber firmado las advertencias de Ley y tener conocimiento de la misma, volvió a manifestar que la evidencia era de él con la excepción de la pipa para fumar crack. ”

Por estos hechos se presentó acusación contra el señor Enrico Rivera Torres (el peticionario) por violación a los Arts. 401, 404 y 412 de la Ley de Sustancias Controladas, Ley Núm. 4 del 23 de junio de 1971, según enmendada, 24 L.P.R.A. see. 2401 et seq. Celebrada la vista preliminar, el Tribunal de Primera Instancia determinó que existía causa probable para acusar al peticionario de los delitos.imputados.
El 20 de marzo de 2002, el peticionario presentó una "Moción Solicitando Supresión de Evidencia" en la que alegó que la orden de allanamiento se había basado en varias premisas falsas.
El 4 de junio de 2002 se celebró la correspondiente vista, y atendidos los argumentos de las partes, el Tribunal de Primera Instancia declaró no ha lugar la moción de supresión de evidencia.
No conforme, el peticionario comparece oportunamente ante nos y solicita la revocación de la determinación del Tribunal de Primera Instancia, señalando que:
“Erró el Honorable Tribunal Superior al declarar SIN LUGAR la Moción de Supresión de Evidencia, a pesar de que en la forma en que se ocupó la evidencia la misma resultaba inadmisible en derecho.” (Enfasis original)
El Pueblo de Puerto Rico, representado por el Procurador General, compareció mediante "Escrito para Mostrar Causa". Con el beneficio de ambas comparecencias, resolvemos.
II
La sección 10 del Artículo II de nuestra Constitución protege a los ciudadanos contra registros, incautaciones y allanamientos irrazonables. Se exige que todo arresto o todo registro sea ordenado por autoridad judicial y que ello tenga lugar únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, las personas a detenerse y las cosas a ocuparse. La evidencia obtenida en violación a dicha sección es inadmisible en los tribunales. Pueblo v. Calderón Díaz, 156 D.P.R. _ (2002), 2002 J.T.S. 48, página 935; Pueblo v. Bonilla Bonilla, 149 D.P.R. _ (1999), 99 J.T.S. 157, página 226.
La Regla 234 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, le permite a la parte agraviada por un registro o allanamiento irrazonable solicitarle al tribunal la supresión de la evidencia obtenida en virtud de tal acto ilegal. Este principio también aplica cuando estamos ante un testimonio que, de ser inadmisible, daría lugar a la desestimación de los cargos y a la absolución del acusado. Pueblo v. Rey Marrero, 109 D.P.R. 739, 750 (1980). Tal es el caso de los testimonios estereotipados.
Testimonio estereotipado es aquél que se ciñe a establecer los elementos mínimos necesarios para sostener un delito, sin incluir detalles imprescindibles para reforzarlos. Pueblo v. Acevedo Estrada, 150 D.P.R. _ (2000), 2000 J.T.S. 22, página 570; Pueblo v. Camilo Meléndez, 148 D.P.R. _ (1999), 99 J.T.S 96, página 1168; Pueblo v. Rivera Rodríguez, 123 D.P.R. 467, 480 (1989); Pueblo v. Almodóvar, 109 D.P.R. 117, 125 (1979); Pueblo v. González del Valle, 102 D.P.R. 374, 377 (1974).
Los parámetros esenciales para examinar la credibilidad de un testimonio estereotipado son: (1) el mismo debe ser escudriñado con especial rigor; (2) tanto los casos de la evidencia abandonada o lanzada al suelo como los casos del acto ilegal a plena vista deben, en ausencia de otras consideraciones, incluir sospecha de la posible *858 existencia de testimonio estereotipado; (3) cuando el testimonio es inherentemente irreal o improbable debe rechazarse; (4) el testimonio estereotipado puede perder .su condición de tal si-, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; y (5) la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones. Pueblo v. Acevedo Estrada, supra, página 577. El uso de declaraciones estereotipadas por cualquier tipo de testigo, incluyendo el caso de los agentes del orden público, debe ser objeto de escrutinio riguroso por los tribunales para evitar que declaraciones falsas o inexactas vulneren derechos de ciudadanos inocentes. Pueblo v. Camilo Meléndez, supra, página 1168.
La sospecha de que se está ante un testimonio estereotipado no significa que el testimonio deba descartase siempre. El testimonio estereotipado puede perder su condición como tal si va más allá de los datos indispensables para probar los requisitos mínimos del delito y provee detalles sobre la investigación. Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990, 1007 (1993). Hoy día no cabe hablar de que un testimonio es estereotipado meramente por tratarse de una transacción delictiva a plena luz del día. Pueblo v. Torres García, 137 D.P.R. 56, 67 (1994).
Por otra parte, para establecer la causa probable requerida para la expedición de una orden de allanamiento, no es necesario establecer que de hecho la ofensa que se imputa fue cometida. Basta que el deponente haya tenido base razonable para entender que se ha violado la ley en el lugar a ser registrado o allanado. Esto es suficiente para la expedición de la orden. La causa probable se determina a base de criterios de probabilidad y razonabilidad. El criterio de razonabilidad se basa en el de un individuo pmdente y razonable, que en el análisis de los hechos aparentes, puede creer que se ha cometido la ofensa imputada. Este criterio no debe basarse en meras sospechas, pero tampoco requiere que el juez quede convencido, fuera de duda razonable, que se está violando la Ley, ni que- se establezca que la ofensa que se imputa fue verdaderamente cometida. La probabilidad se basa en criterios objetivos. Estos deberán exponerse en la declaración jurada a base de la cual se solicite el registro. En el caso de allanamientos, la causa probable consiste en la probabilidad de que exista determinado objeto incautable y que ese objeto se encuentra en el lugar a ser allanado. Pueblo v. Camilo Meléndez, supra, página 1167; Pueblo v. Pagán Santiago, 130 D.P.R. 470, 483-84 (1992); Pueblo v. Muñoz Santiago, 131 D.P.R. 965, 979-80 (1992).
Al analizar una determinación de causa probable para expedir una orden de allanamiento, basada en información provista por un confidente, se exige que la confidencia haya sido corroborada por el agente que presta la declaración jurada, ya sea mediante observación personal o por información de otras fuentes. Es suficiente que la investigación policial indique la presencia de alguna actividad delictiva o sospechosa del carácter sugerido en la confidencia lo que junto a la confidencia y otras alegaciones en la declaración jurada permitan razonablemente hacer una determinación de causa probable. Pueblo v. Santiago Avilés, 147 D.P.R. 160, 169 (1998).
III
Debemos determinar si debe suprimirse la evidencia que le fue ocupada al peticionario. Si concluyéramos que el testimonio del Agente Colón fue estereotipado, como alega el peticionario, entonces la orden de allanamiento fue ilegalmente expedida y tendríamos que concluir que la presencia del Agente Vélez en la residencia allanada fue ilegal y, por tanto, el registro irrazonable, procediendo la supresión de la evidencia incautada.
El peticionario alega que la orden de allanamiento que dió lugar a la intervención de los agentes en su residencia estuvo basada en una serie de premisas falsas, a saber: (1) que en la residencia vivían tres personas, cuando la realidad era que una de las personas a las que se hace referencia había muerto en el año 1975;.(2) que en el balcón de la residencia fue vista una planta de marihuana, mas, sin embargo, dicha planta no se mencionó *859 en la declaración jurada del agente que diligenció la orden de allanamiento; y (3) que se habló de una persona de 23 o 24 años de edad, 57" de estatura, pelo rubio y unas 165 libras de peso, cuando el acusado mide 6’ de estatura y pesa 210 libras. Argumentó que era increíble que el Agente Colón hubiera visto una planta de marihuana exhibiéndose en el balcón del segundo piso de la residencia, donde podía ser vista por cualquier persona. Alegó, además, que ello denota que la supuesta información no fue corroborada y sí manipulada para establecer una aparente corroboración, por lo que la declaración jurada que dio lugar a la expedición de la orden de allanamiento era "el perfecto modelo de lo que resulta ser un testimonio estereotipado, que requiere sea escudriñado".
Principalmente, el peticionario basa su contención en que el Agente Colón describe en la declaración que sirvió de base a la orden la presencia de una planta de marihuana en el balcón del segundo piso de la residencia allanada, a la cual no se hizo referencia en la declaración del agente que diligenció la orden.
En dicha declaración jurada, el Agente Colón expresó que el 24 de julio recibió una querella de parte del Tnte. Orlando Ortiz Soto en la cual le informó sobre una confidencia que indicaba que en la calle Vives #73 de Ponce, residencia de dos plantas, construida en cemento, color verde, que ubica frente al estacionamiento Carlos Garay, había varias plantas de marihuana de aproximadamente cinco pies de alto, en unas pailas de pintura color blancas, y que la residencia era visitada por personas vinculadas al trasiego de drogas. Que al día siguiente, comenzó su investigación y en la primera visita al lugar observó que en el balcón de los altos de la residencia #73, descrita en la confidencia, había una planta color verde de aproximadamente cuatro pies de alto. Pero que no pudo identificar a simple vista que clase de planta era, por lo que fue al cuartel a buscar unos binoculares. Que al regresar al lugar de la investigación, se ubicó donde tenía visibilidad con los binoculares hacia el balcón donde se encontraba la planta y observó que se trataba de una planta de marihuana. Que al otro día, realizó dos visitas: en la primera, la planta no estaba en el balcón de la residencia, pero sí estaba en la segunda visita. También declaró el Agente Colón, que vio entrar a la referida residencia a un hombre conocido como Cambrelen, persona que anteriormente había sido arrestada por violación a la ley de sustancias controladas.
Sostiene el peticionario que como la información sobre las plantas de marihuana fue alegadamente ofrecida por un informante, el Agente Colón estaba obligado a corroborar o verificar la misma. Pueblo v. Santiago Avilés, supra. Pero que la corroboración que dice el agente haber realizado no era otra cosa que información falsa con el único propósito de establecer una aparente corroboración de la confidencia alegadamente recibida. El peticionario basa su alegación en que resulta increíble que a alguien se le ocurra exhibir una planta de marihuana en un balcón, frente a uno de los terminales de carros públicos más grande que hay en Puerto Rico, por donde a diario pasa una gran cantidad de transeúntes y de agentes de la Policía de Puerto Rico.
Sobre este particular, alega el Procurador General que el hecho de que el Agente Colón tuvo que recurrir a binoculares para poder distinguir si se trataba de una planta de marihuana, demuestra que la misma no era distinguible a simple vista sin un lente magnificante.
Sin embargo, nos llama la atención que cuando el Agente Vélez fue a diligenciar la orden de allanamiento pudo llegar hasta la misma puerta de la residencia allanada sin interferencia alguna, lo que sugiere que de ser cierto que la planta de marihuana se sacaba al balcón en algunas ocasiones, también sería cierto que la misma podía entonces ser observada a simple vista, por cualquier persona que pasara frente a la casa. Ello levanta la interrogante de porqué el Agente Colón no se acercó hasta la residencia para corroborar que en efecto se trataba de una planta de marihuana, y porqué no se actuó de inmediato ante la aparente comisión de un delito grave en su presencia, para la cual no necesitaba orden de allanamiento. En efecto, nos mueve a examinar el testimonio del Agente Colón con sospecha de la posible existencia de testimonio estereotipado. Pueblo v. Acevedo Estrada, supra.
*860 En cuanto a la alegada segunda premisa falsa, argumenta el peticionario que en la declaración jurada que prestó el agente que diligenció la orden de allanamiento (Agente Vélez), éste no hizo referencia a la planta de marihuana que en algunas ocasiones había sido ubicada en el balcón de la residencia allanada. En su declaración jurada, dicho agente hizo referencia a cuatro plantas de marihuana encontradas en el patio de la residencia, a cierta parafemalia que se usa para la producción y consumo de marihuana, a varias bolsas conteniendo hojas secas y semillas de marihuana y una pipa plástica que se utiliza para fumar crack.
También resulta significativo la incongruencia entre la información alegadamente suministrada por el supuesto informante sobre la composición del núcleo de residentes (tres) de la propiedad allanada -incluyendo en dicho núcleo al padre de Walter que tenía más de 25 años de fallecido- y la realidad factual. Además, llama la atención la discrepancia en cuanto a la descripción física de los moradores de la residencia allanada, según ofrecida por el Agente Colón a raíz de su investigación, y la descripción física real, corroborada durante el proceso judicial. Se habló de una persona de 23 ó 24 años de edad, 57" de estatura, pelo rubio y unas 165 libras de peso, cuando el acusado mide 6' de estatura y pesa 210 libras.
En cuanto a dichas incongruencias, señala el Procurador General que el hecho de que un testigo falte a la verdad en parte de su testimonio, no implica que debe rechazarse el resto de su declaración. La máxima falsus in ómnibus no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltado a la verdad respecto a uno o más particulares. Quintana Tirado v. Longoria, 112 D.P.R. 276, 292 (1982); Pueblo v. López Rivera, 102 D.P.R. 350, 365-66 (1974). Señala además, que a tenor con lo anterior, no ve razón alguna por la cual se deba descartar una confidencia recibida por el hecho de que no se pudo corroborar un aspecto de la misma.
Ciertamente, quedó demostrado que el padre de Walter había fallecido mucho antes de que ocurrieran los hechos (25 años). Sin embargo, señala además el Procurador, que el agente no dijo que hubiera visto al padre de Walter ni le imputó delito alguno. Que éste simplemente declaró lo que el confidente había informado.
En cuanto a la declaración relacionada a la estatura y el peso del acusado, encontramos que el Agente Colón ofreció una descripción bastante apartada de las características físicas reales del peticionario. El agente dijo que el acusado medía 57" de estatura y pesaba 165 libras, mientras que el peticionario mide 6 pies de estatura y pesa 210 libras. Es decir, una diferencia de aproximadamente cuatro pulgadas de estatura y cuarenta y cinco libras de peso. Dicha discrepancia no nos parece razonable, viniendo de una persona con el entrenamiento del Agente Colón. Estamos ante contradicciones sobre aspectos fundamentales, que erosionan el valor del testimonio ofrecido por el Agente Colón.
IV
Ante las incongruencias señaladas, las cuales ponen en duda los detalles que diferencian una declaración estereotipada, de una que no lo es, debemos resolver que la declaración jurada ofrecida por el Agente Colón para obtener la orden de allanamiento fue una declaración estereotipada. Al no ser válido su testimonio para configurar la causa probable necesaria para expedir la orden de allanamiento, el registro diligenciado por el Agente Vélez fue ilegal y, en consecuencia, la evidencia encautada inadmisible para encausar al peticionario, por lo que la misma debe ser suprimida.
La misión de los tribunales requiere analizar integralmente toda la prueba a los fines de llegar a una conclusión correcta y razonable del peso que ha de concedérsele en su totalidad. Quintana Tirado v. Longoria, supra, página 292, nota 9.
V
En virtud de los fundamentos que anteceden, expedimos el auto, revocamos la resolución recurrida y ordenamos la supresión de la evidencia encautada.
*861 Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau Secretaria General