EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARMELO DÍAZ DÍAZ, acusado y apelante.

*Número:* CR-76-101          *Resuelto:* 5 de octubre de 1977

*Ismael Cuevas Velázquez,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Lirio Bernal de González, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El apelante—acusado de tentativa de robo, tres infracciones al Art. 6 de la Ley de Armas y tres al Art. 8 de dicha ley, y absuelto del primero y convicto en los restantes por tribunal de derecho—señala ante nos la comisión de tres errores, que en esencia se reducen a determinar: 1) si existió causa probable para su arresto; 2) si hubo un registro razonable incidental a dicho arresto; y 3) si debió descartarse toda la prueba de cargo por no haberse creído parte de ella.

La solución del caso exige expongamos en detalle los hechos según surgen de la exposición narrativa de la prueba. En la tarde del 6 de septiembre de 1973, el agente del Cuerpo de Investigaciones Criminales Alejo Maldonado, recibió una llamada telefónica anónima de una mujer informándole que en la mañana del día siguiente dos individuos, ocupando un carro blanco, grande, se proponían asaltar a un mensajero del Banco Popular del pueblo de San Lorenzo, después que éste saliera de dicha institución a entregar una nómina a una fábrica cercana al pueblo. Desconociendo cuál era el área en particular, el día siguiente, el agente Maldonado apostó dos agentes del C.I.C. en un vehículo en una de las zonas indus-

triales de San Lorenzo y cuatro agentes adicionales en vehículo en otra área industrial de dicho pueblo.

Luego el agente Maldonado y su jefe inmediato fueron a observar el área donde ubican las oficinas del Banco Popular en San Lorenzo. Vieron en las cercanías del banco un automóvil blanco, marca Pontiac, con capota negra y dos ocupantes, pero no le prestaron atención, porque los sujetos no lucían sospechosos. Maldonado y su jefe subsiguientemente fueron a Caguas a verificar cierta información.

Cuando regresaban a San Lorenzo fueron informados por radioteléfono, que dos de los agentes apostados en las fábricas estaban siguiendo a un vehículo blanco, grande, con capota negra, que les pareció sospechoso, que era ocupado por dos individuos con gafas obscuras, uno con boina y el otro con sombrero. El vehículo sospechoso iba de San Lorenzo hacia Caguas, y cuando el de Maldonado se cruzó con aquél se percató de que era el mismo que había observado en las inmediaciones del Banco Popular. Cabe aclarar que los individuos no tenían gorra, sombrero o gafas puestas cuando Maldonado los vio frente al Banco Popular. Inmediatamente, Maldonado viró para darle alcance al carro sospechoso. Detrás del carro sospechoso iba el automóvil del mensajero del Banco Popular, el cual en algún momento había sido rebasado por dicho carro. Después del automóvil del mensajero iba el de un testigo renunciado por el Ministerio Fiscal, que declaró como único testigo de la defensa. El quinto o sexto vehículo detrás del de ese testigo era el de los agentes que desde antes seguían al sospechoso. El automóvil de Maldonado rebasó todos esos vehículos, incluyendo el del apelante, casi en el mismo momento en que este último se detuvo brúscamente en el centro de la carretera, en medio de un puente. El apelante, quien guiaba el carro sospechoso, había comenzado a abrir la puerta del lado izquierdo cuando fue rebasado por el de Maldonado quien lo detuvo frente al de aquél. Maldo-

nado se apeó, revólver en mano y ordenó al apelante y a su compañero que salieran del carro.

De rigor un paréntesis para señalar que los testigos de cargo—Maldonado, otro agente y el mensajero del banco— declararon que vieron al apelante y a su compañero con revólveres en sus manos. El testigo renunciado por el Ministerio Fiscal y usado por la defensa, atestó que no vio revólveres en sus manos. (¹)

Después que el apelante y su compañero salieron del vehículo, fueron registrados por los agentes sin encontrarse nada delictivo sobre sus personas; sin embargo, sobre el asiento del mismo observaron tres revólveres cargados y en el interior del vehículo encontraron un número sustancial de balas, otras gafas, varios pares de guantes y otra evidencia que se presentó en el juicio.

A la luz de esta prueba, el tribunal de instancia, como vimos, determinó que el apelante y su compañero no tenían armas en sus manos cuando fueron intervenidos, absolviéndolos bajo la premisa de que no habían cometido acto alguno relacionado con la tentativa de robo. Sin embargo, concluyó que hubo causa probable para arrestarlos y que el registro del vehículo fue uno razonable e incidental al arresto. (²) Fundamentó la existencia de tal causa en el criterio de que se estableció una confidencia anónima que fue corroborada por observaciones de los agentes del C.I.C.

---

(¹) El tribunal sentenciador expresó que no daba crédito a esa parte de la prueba de cargo, y en consecuencia, determinó que el apelante y su compañero no tenían revólveres en sus manos. En esa determinación posiblemente influyó el hecho de que el mensajero del banco no expresó en la vista preliminar, ni en una declaración jurada, que hubiese visto armas en manos de dichos individuos. Aun cuando creemos que era poco probable que ellos hubiesen desplegado sus armas en un momento en que eran seguidos por varios vehículos, preciso es reconocer que Maldonado estaba en mejor posición que los demás testigos para observar los actos del apelante pues ése era precisamente su objetivo. Para la solución del caso, asumiremos que el apelante y su compañero no tenían las armas en sus manos.

(²) Los cargos contra el compañero del apelante se vieron en juicio separado y no están ante nuestra consideración en la presente apelación.

# I

■ El análisis de nuestro ordenamiento vigente nos mueve a resolver que los errores no fueron cometidos. De acuerdo con la Regla 11 de Procedimiento Criminal un agente del orden público no necesita orden de arresto para arrestar a una persona cuando dicha persona ha cometido un delito grave, o cuando el agente tiene motivos fundados para creer que lo cometió, o cuando tiene motivos fundados para creer que cometió un delito en su presencia. La frase "motivos fundados" es sinónima de "causa probable". Es sobre los criterios que nutren este concepto, en lo relativo a una confidencia, que debemos fijar nuestra atención.

Salvo *Pueblo* v. *Flores Valentín*, 88 D.P.R. 913 (1963), ha sido escasa nuestra jurisprudencia relacionada con arrestos fundados en confidencias.(3) Este caso sostuvo la existencia de causa probable para arrestar a una persona que se encontró dentro de un local, que a las 2:00 A.M., tenía la puerta partida y entreabierta, y de donde emanaba un fuerte olor a gasolina, luego de haber la policía recibido confidencias de que esa noche alguien iba a incendiarlo. Para apoyar esa conclusión citamos del caso *Ker* v. *State of California*, 374 U.S. 23 (1963), lenguaje al efecto de que puede establecerse causa probable a base de información de un informante confiable, corroborada por observaciones del agente respecto a la exactitud de la descripción del acusado y de su presencia en

---

(3) Posteriormente, el mismo lenguaje de *Ker*—citado en *Flores Valentín*—fue reiterado en *Pueblo* v. *Cruz Rivera*, 100 D.P.R. 345 (1971), para apoyar la validez de un arresto, a pesar de que en dicho caso tampoco surge nada respecto a la confiabilidad del confidente, ni de su descripción de los acusados. Cabe anotar sin embargo, que en *Cruz Rivera* no era necesario examinar la doctrina del confidente, ya que los agentes observaron a los acusados bregando con material relacionado con el uso de drogas.

En los casos *Pueblo* v. *González Rivera*, 100 D.P.R. 651 (1972); *Pueblo* v. *Nieves Vargas*, 101 D.P.R. 263 (1973) y *Pueblo* v. *Torres Resto*, 102 D.P.R. 532 (1974), los agentes actuaron a base de confidencias, pero la regla del confidente no se discutió sino la referente a delitos en presencia de agentes del orden público.

un sitio específico. Sin embargo, del caso *Flores Valentín* no surge que se hubiese establecido que el informante era confiable, ni que éste hubiese descrito al acusado.

■ En la jurisdicción federal se ha debatido y considerado la cuestión. Jurisprudencialmente se han fijado criterios razonables para determinar las circunstancias en que una confidencia puede servir de base para la existencia de causa probable, los cuales merecen nuestra aprobación. El análisis de casos revela que una confidencia es suficiente para validar la existencia de causa probable si se establece la concurrencia de una o más de las siguientes circunstancias: 1) que el confidente previamente ha suministrado información correcta; 2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y 4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse. Véanse: *United States* v. *Harris*, 403 U.S. 573 (1971); *Whiteley* v. *Warden*, 401 U.S. 560 (1971); *Spinelli* v. *United States*, 393 U.S. 410 (1969); *Recznik* v. *City of Lorain*, 393 U.S. 166 (1968); *McCray* v. *Illinois*, 386 U.S. 300 (1967); *Beck* v. *Ohio*, 379 U.S. 89 (1964); *Ker* v. *California*, 374 U.S. 23 (1963); *Wong Sun* v. *United States*, 371 U.S. 471 (1962); *Jones* v. *United States*, 362 U.S. 257 (1960); *Draper* v. *United States*, 358 U.S. 307 (1959).

■ Valga aclarar, además, que esos casos revelan que el Tribunal Supremo de los Estados Unidos ha seguido una trayectoria a veces errática, en relación con el peso que merece cada una de las circunstancias apuntadas y en torno al número de ellas que deben estar presentes. Así, por vía de ejemplo, en el caso *Harris*, supra—en que no hubo opinión mayoritaria—tres jueces estuvieron de acuerdo en que dicho foro nunca ha exigido que se demuestre la confiabilidad anterior del confidente. 403 U.S. 581. Sin embargo, en el caso más reciente en que se certificó una opinión mayoritaria,

*Whiteley* v. *Warden,* supra, se consigna un lenguaje que podríamos estimar como representativo de una tendencia normativa futura: (⁴)

"... cuando el impulso inicial para un arresto es una confidencia, la información acumulada por los agentes que arrestan, puede usarse para sostener válidamente la determinación de existencia de causa probable para un arresto, el cual no tendría base adecuada solamente en la confidencia [cita omitida]. Pero la información adicional adquirida por los agentes, debe en cierto sentido ser corroborativa de la confidencia de que los arrestados cometieron un delito grave o . . . que estaban en vías de cometerlo . . . ." 401 U.S. 567. (Traducción nuestra.)

## II

El presente caso es parecido al de *Flores Valentín* y satisface cabalmente las normas enunciadas en la decisión de *Whiteley* v. *Warden,* supra, que representa el último pronunciamiento del Tribunal Supremo Federal sobre el aspecto que nos ocupa. Coincidimos en que puede establecerse causa probable mediante prueba de una confidencia que aunque en su origen sea incompleta, unida a información ulterior obtenida por los agentes, en algún sentido o medida corrobore que la persona arrestada estaba en el proceso de cometer un delito grave.

Es innegable que los agentes recibieron una confidencia de que dos personas ocupando un automóvil blanco grande iban a asaltar a un mensajero del Banco Popular cuando saliera a entregar la nómina de una fábrica cercana. A dos

---

(⁴) El Tribunal, sin embargo, ha ido más lejos en casos de cacheo (*stop and frisk*) y ha sostenido que en tales casos puede realizarse un cacheo aun cuando una confidencia, que no tenga signos de confiabilidad, ha sido investigada, o cuando un confidente creíble advierte al agente de un crimen específico que está a punto de cometerse. *Adams* v. *Williams,* 407 U.S. 143, 147 (1972). Puede hacerse un cacheo de un sospechoso, aunque no exista causa probable para su arresto, si el agente tiene motivos razonables para creer que el sospechoso está armado y que puede ser peligroso. *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 881 (1975).

agentes apostados en la entrada de una fábrica les pareció sospechoso un vehículo que se ajustaba a esa descripción. Ese vehículo coincidió con el que antes había sido visto en las inmediaciones del banco. Los sujetos no tenían gafas, sombrero y boina puestos cuando estaban frente al banco, pero sí las tenían después. Lógico era suponer que el propósito de cubrirse así sus cabezas y ojos fue dificultar su identificación en el momento próximo y cercano en que intentarían el robo. La parada brusca del vehículo sospechoso en el centro de la carretera y a mitad de un puente, obviamente tuvo el propósito de obligar al mensajero del banco que venía inmediatamente detrás, detener su vehículo y reducir su movilidad.

■ Ante tales hechos, era razonable suponer que el momento del asalto había llegado. Es de conocimiento general, máxime de los agentes que combaten el crimen, que en la actualidad puertorriqueña un número sustancial de robos y asaltos se perpetran con armas y que muchos delincuentes no tienen el más mínimo respeto por las vidas de sus víctimas o las de los agentes del orden público. Los agentes, por consiguiente, tenían motivos fundados para suponer que se iban a enfrentar a una situación apremiante y peligrosa. Ante esas circunstancias, cualquier vacilación en actuar o el haber esperado que el apelante llevase a cabo actos adicionales encaminados al robo, hubiese sido una acción torpe e inexcusable. La confidencia sobre el robo quedó corroborada por actos del apelante demostrativos que estaba en proceso de cometerlo. Existió causa probable para el arresto.

## III

■ Lo expuesto nos convence de que el registro fue razonable e incidental al arresto. En vista de que los robos generalmente envuelven el empleo de armas, en casos de esta naturaleza o análogos, el registro es razonable como medida realista encaminada a la protección del agente o de terceras

personas. En el caso de autos, hay una razón adicional para sostener la validez del registro pues de la exposición narrativa surge que los revólveres estaban a la vista sobre el asiento delantero. Por consiguiente es de aplicación nuestra doctrina sobre prueba apreciada a plena vista elaborada en *Pueblo* v. *Dolce*, 105 D.P.R. 422 (1976).

■ Finalmente, no procedía descartar la prueba de cargo por el hecho de que el tribunal no creyera que el apelante tenía el revólver en su mano. Si bien el tribunal caracterizó la cuestión como una de credibilidad, hemos visto como era susceptible de ser considerada como una en que las versiones de los testigos diferían por apreciar los hechos desde distintas posiciones y distancias. Lo esencial es que el apelante solicita que no se crea que poseía y transportaba ilegalmente armas en su vehículo, hecho éste que fue confirmado tanto por el único testigo de defensa, como por la prueba material presentada y admitida en evidencia.

*Se confirman las sentencias.*

El Juez Presidente Señor Trías Monge concurre en el resultado. El Juez Asociado Señor Rigau no intervino.