EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* JORGE PÉREZ OLMO y OTROS, demandados y recurridos.

*Número:* CE-95-61          *Resuelto:* 19 de junio de 1995

*Carlos Lugo Fiol, Procurador General Interino, y Héctor Clemente Delgado, Procurador General Auxiliar,* abogados de El Pueblo.

## RESOLUCIÓN

A la moción de reconsideración presentada: *No ha lugar.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García disintió con una opinión escrita. Los Jueces Asociados Señor Rebollo López y Señora Naveira de Rodón reconsiderarían.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

I

El Ministerio Público acusó a José Pérez Olmo (Tyson), a Ángel Vélez Romero (Angelito), a José A. Ayala Colón (Fredo) y a Richard M. Quiñones (Pipo) de violar los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. 416 y 418.

La intervención de la Policía se originó por dos (2) llamadas anónimas recibidas en el Cuartel de Vieques el 7 de noviembre de 1993. La *primera* comunicó que en el Bo. Fanguito había una *pelea* en la que estaban involucradas unas *armas de fuego*. Inmediatamente, el retén transmitió esa información por radio a las patrullas. Se personaron al lugar los agentes José L. Belardo Carambot y Gilberto Román Colón, y allí varios vecinos les indicaron que había habido una pelea, pero no identificaron quiénes estaban involucrados. Sí vieron a José Alfredo Ayala Colón (Fredo) y a Richard Quiñones (Pipo), ambos conocidos por el policía Belardo Carambot. Pipo se encontraba en la parte trasera de una casita de madera y zinc, y Fredo estaba sentado a la orilla de la calle, tomando una cerveza. El policía Belardo Carambot notó que Fredo tenía la cara sudada y se veía intranquilo. Les preguntaron si había sucedido algo y ambos respondieron que todo estaba tranquilo; entonces los policías se marcharon.

*Poco tiempo después*, se recibió la *segunda* llamada informando que Pipo y Fredo iban a montarse en un *vehículo Toyota de color gris y que tenían unas armas en las manos*. Nuevamente el retén comunicó por radio al agente Belardo Carambot dicha llamada. Éste, a su vez, transmitió la in-

formación a los agentes Sergio López Ojeda y Cruz, de otra patrulla, y les instruyó que tomaran la Carr. Núm. 997, mientras él y Román Colón cubrían las carreteras Núms. 200 y 201. Al llegar a una intersección junto a la *Gasolinera Isla Verde*, los policías Belardo Colón y Román Colón vieron un vehículo Toyota de color gris ocupado por cuatro (4) personas. En los asientos delanteros estaban su conductor Pérez Olmo (Tyson) y, además, Vélez Romero (Angelito); en los asientos traseros iban Pipo y Fredo. *El policía Belardo Carambot sabía que Tyson no era conductor autorizado, pues lo había denunciado dos (2) meses antes por guiar sin licencia y arrojar basura a la vía pública, delitos por los que salió convicto*, respectivamente (T.E., págs. 17–18 y 34). *Exhibit* XIX, págs. 100–101 y 117.

Con esa información a su haber y con el propósito de investigar la querella sobre las armas de fuego, el policía Belardo Carambot les señaló que se detuvieran más al frente de la gasolinera y se comunicó por radio con los agentes de la otra patrulla, quienes llegaron minutos después.

Los ocupantes del vehículo se desmontaron. Cuando lo hacía el último pasajero, Fredo, el agente López Ojeda le indicó al agente Belardo Carambot que sobre el asiento trasero del auto —donde habían estado sentados Pipo y Fredo— había una toalla de la cual sobresalía y era visible la punta (cañón niquelado) de un arma de fuego (T.E., págs. 40–41). *Exhibit*, págs. 123–124. Ocuparon un revólver *Colt* negro y un *Smith & Wesson* niquelado, con la serie mutilada, ambos pequeños, calibre 38 y cargados.

Previa solicitud y vista al efecto, el Tribunal Superior, Sala de Humacao (Hon. Fernando Gierbolini, Juez), suprimió la evidencia. No conforme, acudió ante nos el Procurador General. El pasado 31 de marzo este Foro denegó el

recurso.([1]) Ahora, en reconsideración, debimos expedir y revocar. Nos explicamos.

## II

En *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 354 (1977), resolvimos "que una confidencia es suficiente para validar la existencia de causa probable si se establece la concurrencia de una o más de las siguientes circunstancias: 1) que el confidente previamente ha suministrado información correcta; 2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3) que la confidencia ha sido corroborada por observaciones del agente o por información proveniente de otras fuentes; y 4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse". Véase *Pueblo v. Ortiz Alvarado*, 135 D.P.R. 41 (1994).

Ya desde *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. 965 (1992), habíamos aclarado el ámbito de esos criterios precisando que para que la información de un confidente anónimo valide parcialmente la existencia de causa probable, nuestra casuística había exigido que dicha confidencia fuera corroborada por el agente mediante una observación personal o mediante información de otras fuentes.

*Pueblo v. Ortiz Alvarado*, supra, reiteró además, que en este tipo de caso rige la norma de la totalidad de las circunstancias. Respecto a la corroboración en sí, destacamos que ésta " 'no debe limitarse a ver si la conducta observada es inocente o incriminatoria, *sino a evaluar el grado de sospecha que conllevan todos los actos de la persona. ...* La investigación policial no tiene que generar por sí misma evidencia suficiente para establecer causa probable. *Es suficiente que indique la presencia de alguna*

---

([1]) El Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el que suscribe lo hubiesen expedido.

*actividad sospechosa del carácter sugerido en la confidencia* que *unido* a ella y a otras alegaciones en la declaración jurada pueda razonablemente constituir causa probable.' (Énfasis suplido.) *Pueblo v. Muñoz, Colón y Ocasio*, supra ...". *Pueblo v. Ortiz Alvarado*, supra, págs. 46–47.

A la luz de esta breve normativa, analicemos el caso.

### III

No se cuestiona que efectivamente se recibieron dos (2) confidencias telefónicas de un informante no identificado. La *primera* ubicó a Fredo y a Pipo en el Bo. Fanguito y que había una pelea en la que estaban involucradas unas armas de fuego. La Policía legítimamente investigó y efectivamente constató la presencia allí de Fredo y Pipo. Estas circunstancias, aun cuando no generaron motivos fundados para intervenir, establecieron la confiabilidad de parte de la *primera* información recibida, esto es, permitió a la Policía corroborar la identidad de esas dos (2) personas y su ubicación.

Subsiguientemente, *la segunda* confidencia comunicó que esas dos (2) mismas personas —Fredo y Pipo— se disponían a irse en un vehículo Toyota, de color gris, y además, que portaban unas armas. Otra vez la información anónima suministrada fue *explícita* respecto a *lugar, identidad* de algunos de los participantes, marca del vehículo de motor, su color, y naturaleza de las acciones ilegales en ejecución. Los patrulleros coordinaron un plan de acción para localizar el vehículo. Lo hicieron y legítimamente ordenaron a sus ocupantes que se detuvieran para fines investigativos.

*Es un dato no contradicho* que el agente Belardo Carambot sabía que su conductor Tyson no era chofer autorizado y, además, que el sello de inspección vehicular estaba vencido. En ese momento, distinto al criterio de la ilus-

trada sala de instancia, ambos hechos —de propio y personal conocimiento— *unidos a la corroboración por observaciones de la marca del vehículo, su color y sus ocupantes, configuraron válidamente causa probable.*

El ordenar que se bajaran *todos*, simplemente fue una medida racional y razonable de *seguridad* que generó el descubrimiento de las armas visibles desde el exterior.

La evidencia no debió suprimirse; seguimos insistiendo, causa probable no es causa exacta.

