En el Tribunal Supremo de Puerto Rico

| EL PUEBLO DE PUERTO RICO | |
| Recurrido | Certiorari |
| V. | |
| | 98TSPR162 |
| José Ismael Santiago Avilés | |
| Edith Castellar Rodríguez | |
| Peticionarios | |

Número del Caso: CC-95-0009

Abogados de la Parte Peticionaria:  Lic. José Antonio Ralat Pérez

Abogados de la Parte Recurrida:    Hon. Carlos Lugo Fiol
Procurador General

Lic. Ricardo E. Alegría Pons
Procurador General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Ponce

Juez del Tribunal de Primera Instancia: Hon. Eliadís Orsini Zayas

Tribunal de circuito de Apelaciones: Circuito Regional de Ponce y
Aibonito, Panel 1

Juez Ponente: Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Fecha: 12/2/1998

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

El Pueblo De Puerto Rico

    Recurrido

        v.                        CC-95-9          CERTIORARI

Jose Ismael Santiago Aviles
Edith Castellar Rodriguez

    Peticionarios

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico a 2 de diciembre de 1998

    Se recurre ante nos, vía recurso de certiorari, en solicitud de revisión de una resolución emitida el 31 de marzo de 1995 por el Tribunal de Circuito de Apelaciones, Circuito Regional de Ponce y Aibonito; mediante la referida resolución, el mencionado foro apelativo intermedio denegó un recurso de certiorari, radicado por los acusados peticionarios, mediante el cual éstos pretendían la revocación de una determinación emitida por el Tribunal de Primera Instancia denegatoria la misma de una moción de supresión de evidencia que éstos habían presentado ante dicho tribunal.

I

De la declaración jurada que prestara el agente Jorge L. Torres Torres[1] con el propósito de lograr la expedición de una orden de allanamiento por un magistrado, contra un apartamento de un residencial público en la ciudad de Ponce, Puerto Rico, surge que el 14 de junio de 1994, aproximadamente a las 3:30 de la tarde, mientras el referido agente se encontraba en el Residencial Lirios del Sur, en un vehículo oficial no rotulado, llevando a cabo una vigilancia en la marginal que colinda con el bloque número 9, le llamó la atención un individuo que salió de dicho bloque, de pelo lacio negro, delgado, de alrededor de 35 años de edad, vistiendo camiseta blanca, mahón azul y zapatos deportivos.

Este individuo fue llamado por un joven que se encontraba en la acera que colinda con dicho bloque. El joven era delgado, de cerca de 65 pulgadas de estatura, unos 25 años de edad y vestía mahón corto y camiseta azul. El individuo de pelo negro fue hasta donde el joven que se encontraba en la acera que colinda con el bloque número 9. Este último le dio un dinero en moneda legal americana. Aquél lo tomó y se lo guardó en el bolsillo; se subió su camiseta blanca y sustrajo de su cintura una

---

[1] No consta, ni en el expediente ni en los autos del Tribunal de Instancia, copia de dicha declaración jurada.

bolsa plástica transparente, como de 4 pulgadas de largo por 6 pulgadas de ancho, en la cual se podían observar bastantes envolturas pequeñas color azul de las que, según su experiencia, son utilizadas para empacar la cocaína. Sacó de la bolsa una envoltura y se la entregó al joven. Este la cogió y se retiró del lugar. El individuo de pelo negro comenzó a caminar hacia el bloque número 10 y entró al apartamento 98.

En ese momento, el agente Torres Torres regresó a donde se encontraba inicialmente, cerca del bloque número 9 y minutos más tarde observó que el individuo de pelo negro volvió a esa área, fue hasta el apartamento 91 y entró al mismo. El individuo salió del apartamento y se quedó conversando con una mujer —a la cual él llamó Erika— que el agente no pudo ver porque estaba dentro del mismo. Posteriormente, el individuo se retiró y se cerró la puerta del apartamento. El agente se percató de que el individuo tenía una bolsa de papel estraza pequeña y de que caminó hasta el bloque número 15 —donde, según Torres Torres, hay un teléfono abandonado y tiene un punto de drogas— y se sentó en una silla que hay "debajo de un palo" al cruzar la calle del estacionamiento.

Luego, un señor mayor de edad, de entre 45 y 50 años, constitución gruesa, trigueña y de alrededor de 65 pulgadas de estatura, entregó un dinero al joven quien sacó de la bolsa de papel estraza una bolsa plástica

color clara. El señor fue hasta una casa abandonada y comenzó a "enrolar estilo cigarrillo" con papel blanco, el cual según la experiencia del agente era un cigarrillo de marihuana, lo prendió y comenzó a fumar. El Agente Torres Torres no realizó arresto alguno en dicho día como tampoco hizo gestiones para conseguir una orden de allanamiento.

Un mes más tarde, el 15 de julio de 1994, el agente Torres Torres se entrevistó, mediante llamada telefónica, con un informante, que le había ofrecido información anteriormente, y a preguntas de aquél le informó que en el bloque número 9, apartamento 91, vivía una muchacha conocida por Erika que vendía marihuana y que en el bloque 10, apartamento 98, residía una señora conocida por Didi que vendía cocaína y que compartía su vivienda con un muchacho llamado José. El agente concluyó, de acuerdo a lo observado por él el día 14 de junio de 1994 y a la confidencia que un mes más tarde le fuera hecha, que las personas mencionadas estaban utilizando los referidos apartamentos para almacenar cocaína y marihuana en violación a la Ley. Procedió a gestionar, entonces, una orden de allanamiento.

El Juez que expidió la orden, según se expresa en la misma, encontró que existía causa probable de que en el apartamento 98 del Residencial Lirios del Sur de Ponce, el único apartamento descrito en la orden de

allanamiento, se estaba violando la Ley de Sustancias Controladas[2], por lo que ordenó que se procediera inmediatamente al allanamiento y registro del referido apartamento. Así se hizo, ocupando la Policía envolturas conteniendo la droga narcótica conocida como heroína.

El 21 de julio de 1994 se presentaron denuncias por infracción al Artículo 401 de la Ley de Sustancias Controladas contra Ismael Santiago Avilés y Edith Castellar Rodríguez, personas que se encontraban y/o residían en el apartamento en el momento de efectuarse dicho allanamiento. En la vista preliminar celebrada, se determinó causa contra ambos por los delitos imputados, radicándose los correspondientes pliegos acusatorios contra éstos. El 11 de enero de 1995, Santiago y Castellar radicaron una moción de supresión de evidencia, impugnando la validez de la orden de allanamiento expedida, señalando que la misma estuvo basada en una declaración jurada insuficiente que no levanta el grado de sospecha requerido para configurar el elemento de causa probable necesario para la expedición de una orden de esa naturaleza.

El Ministerio Público se opuso a la solicitud de los acusados mediante moción fechada el 20 de enero de 1995. Estos replicaron a dicha oposición el 31 de enero de 1995. Así las cosas, se señaló una vista evidenciaria

---

[2] **Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec.**

para discutir y dilucidar la moción de supresión de evidencia. <u>En la vista, las partes estipularon someter el asunto en controversia bajo los fundamentos esbozados en los referidos escritos</u>. El tribunal de instancia declaró <u>no ha lugar</u> la moción de supresión de evidencia.

Inconformes con dicha resolución, los acusados recurrieron ante el Tribunal de Circuito de Apelaciones, el cual, confirmó la misma declarando no ha lugar la petición de certiorari. Insatisfechos con el dictamen del Tribunal de Circuito de Apelaciones, el 9 de junio de 1995, los acusados presentaron recurso de certiorari ante este Tribunal imputándole al aludido tribunal apelativo haber errado al:

> "... declarar NO HA LUGAR la Moción de Supresión de Evidencia al amparo de la Regla 234 de Procedimiento Criminal, radicada por los acusados-peticionarios."

Concedimos término al Procurador General de Puerto Rico para que mostrara causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la resolución recurrida. El mencionado funcionario cumplió con lo ordenado. Contando con la comparecencia de ambas partes, procedemos a resolver la controversia ante nos, cual es si, en efecto, había base suficiente para que el magistrado determinara la

existencia de causa probable y expidiera la orden de allanamiento impugnada por los aquí peticionarios.[3]


II

El Art. II Sec. 10 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico dispone que el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables es inviolable. Además, establece que la autoridad judicial únicamente expedirá mandamientos autorizando registros o allanamientos cuando exista causa probable, apoyada en juramento o afirmación, y que la evidencia obtenida en contravención a lo especificado será inadmisible en los tribunales.

Como vemos, este precepto constitucional consagra uno de los derechos más valiosos del individuo, cual es, la inviolabilidad de su morada, Pueblo v. Tribunal Superior, 91 D.P.R. 19 (1964). Por tratarse de un derecho de tan alta jerarquía es que se requiere, por parte de la autoridad judicial, la determinación de la existencia de causa probable, elemento cuya presencia permite la

---

[3] Al revisar una determinación de causa probable de un tribunal de instancia no nos corresponde hacer una determinación de novo sino estimar si la evidencia, considerada en su totalidad, proveía una base sustancial para la determinación de causa probable por el magistrado. Pueblo v. Muñoz Santiago, Opinión y Sentencia de 6 de noviembre de 1992.

intervención legítima del Estado con el referido derecho individual como parte de su interés fundamental de poner en vigor las leyes vigentes en el país.

Este Tribunal reiteradamente ha expresado que al momento de determinar si existe o no causa probable a base de una declaración jurada:

> "Nos concierne sólo la cuestión de si el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado; y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay causa probable que justifica la expedición de una orden." Pueblo v. Tribunal Superior, ante; Pueblo v. Bogard, 100 D.P.R. 565, (1972); Pueblo v. Bonilla, 119 D.P.R. 750 (1987); Pueblo v. Pagán Santiago, Opinión y Sentencia de 20 de mayo de 1992; Pueblo v. Muñoz Santiago, ante; Pueblo v. Ortiz Alvarado, Opinión y Sentencia de 1 de febrero de 1994.

Asimismo, hemos reconocido anteriormente que la determinación de causa probable puede estar basada en hechos percibidos por el declarante, en información recibida de un tercero o en una combinación de éstos. Pueblo v. Muñoz Santiago, ante; Pueblo v. Acevedo Escobar, 112 D.P.R. 770 (1982); Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977).

En el pasado nos hemos enfrentado a la situación en que se recibe la confidencia y, posteriormente, el agente del orden público hace unas observaciones que tienen a corroborar la misma. En el presente caso, por el

contrario, las observaciones ocurrieron <u>con anterioridad</u> a recibir la confidencia.

Ello no obstante, de entrada, procedemos a hacer referencia a la norma aplicable a aquellos casos --entre otros-- donde la declaración jurada que da base a la expedición de una orden de registro o allanamiento está apoyada parcialmente en una confidencia y en observaciones, posteriores a la confidencia, realizadas por el agente del orden público que recibió la confidencia.

En <u>Pueblo</u> v. <u>Díaz Díaz</u>, 106 D.P.R. 348 (1977) este Tribunal adoptó de la jurisprudencia federal cuatro (4) criterios para evaluar las circunstancias en que una confidencia puede servir de base para la existencia de causa probable. Estos criterios son: si el confidente ha suministrado información correcta previamente; si la confidencia lleva hacia el criminal en términos de lugar y tiempo; si la confidencia fue corroborada por observaciones del agente o por información de otras fuentes; y si la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse. Al acoger los criterios antes transcritos, expresamos en <u>Díaz Díaz</u>, ante, que bastaba la concurrencia de uno o más de éstos para entender que la confidencia era suficiente para constituir causa probable.

Posteriormente, <u>sin embargo</u>, reconocimos que a pesar de haber expresado que sólo uno de los requisitos mencionados era suficiente para que la información provista por un confidente anónimo sirviera parcialmente de base para una determinación válida de causa probable, "al aplicar la norma siempre hemos exigido que la confidencia haya sido corroborada por el agente ya sea mediante observación personal o por información de otras fuentes." (Énfasis en el original). <u>Pueblo</u> v. <u>Muñoz Santiago</u>, <u>ante</u>; <u>Pueblo</u> v. <u>Pagán Santiago</u>, <u>ante</u>; <u>Pueblo</u> v. <u>Acevedo Escobar</u>, 112 D.P.R. 770 (1982); <u>Pueblo</u> v. <u>Díaz Díaz</u>, <u>ante</u>.[4]

Específicamente en cuanto al ámbito de la corroboración, hemos expresado que:

> ". . . no debe limitarse a ver si la conducta observada es inocente o incriminatoria, sino a evaluar el grado de sospecha que conllevan todos los actos de la persona. [*Illinois v.*] *Gates*, [462 U.S. 213 (1983)].... La investigación policial no tiene que generar por sí misma evidencia suficiente para establecer causa probable. Es suficiente que indique la presencia de alguna actividad sospechosa del carácter sugerido en la confidencia que unido a ella y a otras alegaciones en la declaración jurada pueda razonablemente constituir causa

---

[4] En <u>Pueblo</u> v. <u>Díaz Díaz</u>, <u>ante</u>, expresamos lo siguiente:

> "Coincidimos en que puede establecerse causa probable mediante prueba de una confidencia que aunque en su origen sea incompleta, unida a información ulterior obtenida por los agentes, en algún sentido o medida corrobore que la persona arrestada estaba en proceso de cometer un delito grave." (Énfasis nuestro.)

probable." (Citas omitidas.) <u>Pueblo</u> v. <u>Muñoz Santiago</u>, <u>ante</u>; <u>Pueblo</u> v. <u>Ortiz Alvarado</u>, <u>ante</u>.

Por último, es importante recordar que este Tribunal ha resuelto consistentemente que el hecho de que un registro o un allanamiento rinda frutos criminosos nunca puede ser utilizado como fundamento para convalidar la ilegalidad del mismo. <u>Pueblo</u> v. <u>Barrios</u>, 72 D.P.R. 171 (1951); <u>Pueblo</u> v. <u>González Rivera</u>, 100 D.P.R. 651 (1972); <u>Pueblo</u> v. <u>Castro Santiago</u>, 123 D.P.R. 894 (1988); <u>Pueblo</u> v. <u>Muñoz Santiago</u>, <u>ante</u>; <u>Pueblo</u> v. <u>Pacheco Báez</u>, Opinión y Sentencia de 8 de junio de 1992.

III

En el caso de autos, somos del criterio que <u>no</u> había base suficiente para que el magistrado determinara la existencia de causa probable y expidiera la orden de allanamiento. Veamos.

De los hechos esenciales que se recogen en la orden de allanamiento, extraídos por el juez de instancia de la declaración jurada prestada por el agente Torres Torres, surge que éste observó a un individuo de pelo lacio y negro, delgado y de aproximadamente 35 años de edad efectuar dos alegadas transacciones de venta de drogas en los alrededores del Residencial Lirios del Sur; la primera, una transacción de venta de supuesta cocaína y la segunda, de supuesta marihuana. El agente alegadamente

pudo observar, además, que el individuo --entre una y otra transacción-- visitó el apartamento 98 del bloque número 10 y el apartamento 91 del bloque número 9 y que al salir de éste último tenía una bolsa pequeña de papel estraza. Así se resume lo observado por el policía Torres.

Según podemos apreciar, los hechos por él percibidos no son de tal naturaleza que permitan a una persona prudente y razonable creer que, específicamente, el apartamento 98 se estuviese utilizando para almacenar cocaína. Ello es así por varias razones. Ninguna de las dos transacciones observadas se realizó en dicho apartamento o lugares adyacentes sino en la calle. La descripción de las personas que menciona el agente en su declaración jurada no corresponde a la persona del aquí peticionario.[5] Del hecho de que una persona que vende droga --la cual lleva escondida bajo su ropa-- haya visitado en una sola ocasión el apartamento 98 del Residencial Lirios del Sur, no se puede concluir razonablemente que dicho apartamento está siendo utilizado para el almacenamiento de sustancias controladas. El propio agente Torres Torres reconoció la inexistencia de causa probable para allanar dicho

---

[5] La descripción del individuo que realizó las transacciones de venta de drogas --pelo lacio y negro, delgado y de aproximadamente 35 años de edad-- no coincide con la del acusado quien es blanco, de pelo lacio rubio y de 25 años de edad.

apartamento. El día que hizo las observaciones <u>no</u> <u>solicitó</u> orden de allanamiento alguna.

Ahora bien, pasados treintiún (31) días, el agente se entrevista por la vía telefónica con un confidente que alegadamente le había ofrecido información anteriormente.[6] A preguntas del agente, el confidente manifestó que en el apartamento 91 vivía una muchacha llamada Erika que vendía marihuana y que en el apartamento 98 residía una señora llamada Didi que vendía cocaína y que compartía el apartamento con un muchacho llamado José. En esta ocasión, <u>y sin realizar gestión de observación alguna posterior a recibir la confidencia</u>, el agente presta declaración jurada con el propósito de que se expida una orden de allanamiento contra <u>uno</u> sólo de los apartamentos mencionados en la confidencia. El Juez que expidió la orden, por su parte, encontró que existía causa probable de que en el apartamento 98 se estaba violando la Ley de Sustancias Controladas y ordenó que se procediera de inmediato al allanamiento del mismo.

Habiendo ya establecido que los hechos observados por el agente no son de tal naturaleza que permitan a una persona prudente y razonable creer que el apartamento 98 se estuviese utilizando para almacenar droga, <u>no</u> cambia nuestra determinación el hecho de que posteriormente el

---

[6] No se especifica si la información provista anteriormente resultó ser correcta.

agente recibiera la confidencia antes señalada. <u>Tal y como hemos visto, nuestra jurisprudencia requiere que para que la información provista por un confidente anónimo[7] sea suficiente para constituir causa probable dicha información debe ser corroborada por el agente mediante observación personal o por información de otras fuentes</u>.

En este caso, es claro que <u>no</u> hubo corroboración de ningún tipo <u>luego</u> de recibida la confidencia. Esto es, el agente <u>no</u> llevó a cabo ninguna investigación ulterior luego de su entrevista con el confidente sino que inmediatamente procedió a prestar la declaración jurada con el propósito de conseguir la orden de allanamiento.

<u>Por otro lado</u>, la confidencia tampoco puede ser utilizada, como pretende el recurrido, para "confirmar" lo observado por el agente ya que, conforme hemos concluido anteriormente, lo presenciado por éste no indicaba actividad delictiva que pudiera hacer pensar a una persona prudente y razonable que específicamente el apartamento 98 del Residencial Lirios del Sur se utilizaba para almacenar cocaína, imputación que se desprende de la confidencia.

<u>Por último</u>, debe señalarse que las observaciones realizadas por el agente, aun cuando consideradas

---

[7] Entendemos que en este caso el confidente era anónimo ya que del expediente no surge ni su identidad ni que la misma era conocida.

suficientes en derecho, no pueden ser utilizadas como base para la expedición de la orden de allanamiento. Las referidas observaciones resultan muy remotas en tiempo en relación con la orden de allanamiento expedida. Véase: Pueblo v. Albizu, 77 D.P.R. 896 (1955); Pueblo v. Tribunal Superior, ante.

En conclusión, al considerar la evidencia en su totalidad, encontramos que la misma no proveía una base sustancial para que el magistrado determinara causa probable y expidiera una orden de allanamiento. En consecuencia, cualquier evidencia ocupada, como fruto de dicha intervención, resulta inadmisible en un tribunal.

Resolvemos, pues, que erró el tribunal de instancia al denegar la supresión de la evidencia. En consecuencia, se dicta Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones mediante la cual declaró no ha lugar la petición de certiorari en que se solicitaba la revisión de la resolución del Tribunal de Instancia declarando no ha lugar la moción de supresión de evidencia.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

CC-97-138

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo De Puerto Rico

    Recurrido

       v.                  CC-95-9      CERTIORARI

Jose Ismael Santiago Aviles
Edith Castellar Rodriguez

    Peticionarios

SENTENCIA

San Juan, Puerto Rico a 2 de diciembre de 1998

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones en el presente caso mediante la cual dicho foro apelativo intermedio confirmó la resolución del tribunal de instancia denegatoria de la moción de supresión de evidencia; devolviéndose el caso al foro de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión disidente a la cual se une el Juez Asociado señor Corrada del Río. La Juez Asociada señora Naveira de Rodón disiente sin opinión escrita.

Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo

CC-97-138

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

          v.                          CC-95-9     Certiorari

José Ismael Santiago Avilés
Edith Castellar Rodríguez

    Peticionarios

Opinión Disidente del Juez Asociado señor Negrón García a la cual se une el Juez Asociado señor Corrada del Río

San Juan, Puerto Rico, a 2 de diciembre de 1998

I

No podemos avalar la respetable Opinión <u>Per Curiam</u> mayoritaria. **Primero**, trasciende los límites permisibles de nuestra tradicional función judicial revisora.[8] **Sin que sea evidencia admisible, confiere valor probatorio a argumentos de la**

---

[8] Otra vez nos apartamos de la sabia admonición expuesta en <u>Illinios</u> v. <u>Gates</u>, 462 U.S. 213, 236 (1983), que **condenó** así el escrutinio estricto de algunos tribunales al adjudicar una moción de supresión de evidencia:

"De igual manera, hemos expresado en reiteradas ocasiones que el escrutinio después de los hechos ('after-the-fact') que hace un tribunal sobre **la suficiencia de una declaración jurada no debe ser a manera de una revisión de novo.** 'La determinación de causa probable [que hace un magistrado] **merece gran deferencia por**

**representación legal de los peticionarios Santiago Avilés y Castellar Rodríguez.**

Como resultado, contrario a lo establecido en <u>Pueblo</u> v. <u>Muñoz</u>, res. en 6 de noviembre de 1992, reiterado en <u>Pueblo</u> v. <u>Meléndez Rodríguez</u>, res. en 13 de julio de 1994 documentalmente la mayoría hace una revisión y determinación <u>de novo</u> **diferente y, sustituye,** la apreciación y aquilatación directa del magistrado que inicialmente oyó declarar al agente Jorge L. Torres Torres, y encontró causa probable para ordenar el allanamiento y registro del apartamento Núm. 98, Residencial Lirios del Sur, Ponce.

> "En cuanto a la revisión apelativa en <u>Certiorari</u> o apelación –usualmente por el Tribunal Supremo de Puerto Rico– si la determinación inicial de causa probable por el magistrado que expidió la orden ya fue confirmada por otro tribunal –en procedimiento de supresión de evidencia o de desestimación de la acusación– la deferencia debería ser aún mayor; nos parece indeseable una determinación <u>de novo</u> por el tribunal apelativo." E.L. Chiesa, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, V. I, Cáp. 6, Sec. 6.10, pág. 371.

Al hacerlo, la <u>Per Curiam</u> mayoritaria pasa por alto que la orden de supresión se presume válida, y su validez no se examina bajo el <u>quantum</u> de prueba más allá de duda razonable. Así aclarado, notamos que en la **vista posterior sobre supresión**, la **única prueba** que tuvo ante sí el ilustrado Tribunal de Primera Instancia, **por estipulación**, fue el contenido de la declaración jurada del agente Torres Torres. En virtud de ese trámite **no estuvo ni está en juego su credibilidad;** sólo evaluar su suficiencia. **No se presentó prueba adicional alguna sobre ningún otro extremo.** Con un récord tan magro, debimos confirmar la **razón de decidir** del reputado Tribunal de Circuito de Apelaciones (Hons. Sánchez Martínez, Córdova Arone y Segarra Olivero), a los efectos de que los escritos de su recurso "por sí solos no apoyan a los peticionarios. El momento para

---

**por parte del tribunal revisor'.** Spinelli, <u>supra</u>, a la pág. 419. 'La actitud negativa o reacia de los tribunales revisores hacia los mandamientos judiciales', Ventresca, 380 U.S., a la pág. 108, **está en conflicto con la marcada preferencia** de la Cuarta Enmienda por los registros autorizados por orden judicial; 'los tribunales no deben invalidar los mandamientos judiciales al interpretar las declaraciones juradas de manera

dilucidar la prueba para sostener lo **alegado** por los peticionarios fue el día de la vista evidenciaria. **No se hizo."**

Aún así, **sin apoyo alguno en la prueba**, la <u>Per Curiam</u> mayoritaria afirma que la descripción física en la declaración jurada del agente Torres Torres, **"no** corresponde a la persona del aquí peticionario [Santiago Avilés]." (Opinión <u>Per Curiam</u>, pág. 12). Salvo la argumentación y alegación que nos hace su abogado en la página 11 de su Petición, no hay evidencia sobre el físico de Santiago Avilés. **Es principio rector que meras alegaciones y teorías, como tampoco argumentos forenses, constituyen prueba.** <u>Pressure Vessels of P.R.</u> v. <u>Empire Gas of P.R.</u>, res. en 23 de noviembre de 1994; <u>Ramos Robles</u> v. <u>García Vicario</u>, res. en 20 de diciembre de 1993; <u>Defendini Collazo</u> v. <u>E.L.A.</u>, res. en 15 de julio de 1993; <u>Reece Corporation</u> v. <u>Ariela, Inc.</u>, 122 D.P.R. 270, 286 (1988); <u>Asociación Auténtica de Empleados Municipales Área Norte de P.R.</u> v. <u>Municipio de Bayamón</u>, 111 D.P.R. 527, 531 (1981).

**Repetimos, ante la <u>ausencia total de esa prueba</u>, la mayoría no podía atribuirle peso alguno al argumento del abogado sobre posible diferencia física del peticionario; máxime valor adjudicativo en esta etapa.**[9]

Disentimos también del aserto mayoritario de que "[e]l propio agente Torres Torres [...] reconoció la inexistencia de causa probable para allanar dicho apartamento [pues e]l día que hizo las observaciones **no** solicitó orden de allanamiento alguna." (Opinión <u>Per Curiam</u>, pág. 12).

**Con todo respeto, se trata de una conjetura más, sin prueba alguna.** ¿Desde cuándo una orden de allanamiento tiene que obtenerse **el mismo día** de las observaciones delictivas? Atribuirle a la inacción ese día del

---

excesivamente técnica, en lugar de utilizar el sentido común'. Id., a la pág. 109."

[9] Independientemente de ello, **en el campo de la especulación**, la supuesta diferencia en edades fluctuante entre veinticinco (25) y treinta y cinco (35) años, producto de una observación a distancia –caracterizada por el propio agente Torres Torres de "aproximada"–, no es de por sí determinante. El pelo lacio coincide. Sobre su color, nada impide que sea cambiado para fines de dificultar o confundir en sala descripciones previas de testigos. Conocemos muchos casos judiciales en que los acusados modifican sus peinados, recortes, eliminan o dejan bigotes o barbas, cambian de vestimenta durante el receso, etc.

agente Torres Torres características de admisión de inexistencia de causa probable, es una especulación que resulta en

agente Torres Torres características de admisión de inexistencia de causa probable, es una especulación que resulta en

abierto conflicto con la norma mayoritaria de que una orden de allanamiento puede gestionarse dentro de un término razonable.

**Segundo**, la mayoría resuelve que, aún cuando se demostró la entrada y salida del apartamento Núm. 98 por persona que vendía drogas en el residencial, ello no es suficiente para razonablemente inferir la existencia de ese material y su uso ilegal dentro del apartamento. Nos dice que "[n]inguna de las dos transacciones observadas se realizó en dicho apartamento o lugares adyacentes sino en la calle." (Opinión <u>Per Curiam</u>, pág. 12).

Esa conclusión ignora el <u>modus</u> <u>operandi</u> en que se desarrolla la triste, pero lucrativa dinámica criminosa del narcotráfico. La experiencia revela la estrecha relación que existe entre las áreas convertidas en "puntos", las calles, residencias y apartamentos cercanos.

Debido a nuestra doctrina jurisprudencial desarrollada bajo el derecho de intimidad y a impedimentos estructurales, no podemos olvidar, que de ordinario, las transacciones y actividades ilícitas que ocurren **dentro de un apartamento** son sumamente difíciles, por no decir físicamente imposible, de ser observadas desde el exterior, **razón por la cual nuestro derecho probatorio acepta prueba circunstancial para así establecerlo con el mismo valor que la directa.**[10]

---

[10] "El criterio o medida para juzgar si existe causa probable **no pude expresarse en términos rígidos y absolutos: la cuestión estriba en determinar si los hechos y las inferencias que se derivan de los mismos, a juicio de una persona prudente y razonable, bastan para creer que se está cometiendo o se ha cometido el delito por el cual la ley autoriza la expedición de una orden de allanamiento.** <u>Carroll</u> v. <u>United States</u>, 267 U.S. 132 (1925); <u>Steele</u> v. <u>United States</u>, 267 U.S. 498 (1925); <u>Dumbra</u> v. <u>United States</u>, 268 U.S. 435 (1925). No es necesario que el juez quede convencido fuera de toda duda razonable de que se está violando la ley. Citando al Tribuna Supremo de los Estados Unidos en <u>Brinegar</u> v. <u>United States</u>, 333 U.S. 160, 175 (1949) expresamos: 'Cuando nos referimos a causa probable... actuamos a base de probabilidades. Estas no son cuestiones técnicas: se trata de consideraciones prácticas y reales que surgen en la vida cotidiana a base de las cuales actúan hombres prudentes y razonables y no técnicos en derecho. La norma o regla en cuanto a la prueba, por consiguiente, depende de la cuestión que debe probarse....'" <u>Pueblo</u> v. <u>Muñoz Santiago</u>, <u>supra</u>. Y es que, "al determinar que es causa probable no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. **Nos concierne sólo la cuestión de si el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado, y si los hechos aparentes que se desprenden de la**

**Tercero**, la mayoría resuelve que un agente del orden público no puede confirmar ni corroborar sus propias observaciones sobre actos delictivos por información o confidencias posteriores. **¿Cuál es la lógica de negarle valor a ese conocimiento? Corroborar, es "[d]ar[le] mayor fuerza a la razón, al argumento o a la opinión aducidos, con nuevos raciocinios o datos"** Diccionario de la Lengua Española (1992), pág. 410. Reconocemos la casuística de que no basta la sola confidencia, sino que es menester que la policía la corrobore. Pueblo v. Díaz, 106 D.P.R. 348 (1977); Pueblo v. Ortiz Alvarado, res. en 1 de febrero de 1994.

**No obstante, esta norma se justifica en las ocasiones en que la policía no tiene propio conocimiento previo de la información referente a la conducta delictiva suministrada en la confidencia.** Por ello exigimos que la **fortalezca** (corrobore) con nuevas razones o datos mediante investigación y observaciones personales directas. A la inversa, en el contexto aquí aplicable, la norma significa que el conocimiento personal anterior que poseía el agente Torres Torres, cobró mayor fuerza (quedó corroborada) con los datos suministrados por el confidente.

Nada impide pues, que el conocimiento previo de la policía sea robustecido con información posterior de un confidente. En el fondo, lo que esta envuelto es la  veracidad del confidente. Y en este extremo –la verdad de una confidencia–, se acepta "que los hechos suministrados por el informante [pueden ser] corroborados por referencia a informes policíacos pasados sobre conducta criminal ocurrida previamente". (Traducción nuestra). La Fave, Search and Seizure, A Treatise on the Fourth Amendment; Vol. 2, Sec. 3.3(f), (1996), pág. 170. **Si la policía puede** corroborar  información que posee en virtud de informes de delitos anteriores, **¿qué justificación hay para negarle igual eficacia corroborativa al conocimiento previo, y personal directo de un agente del orden público?**

---

declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay la causa probable que justifica la expedición de una orden." Pueblo v. Tribunal Superior, 91 D.P.R. 19. 25 (1964) –citas omitidas–.

**Cuarto**, para fines de obtener una orden de allanamiento, la mayoría tacha de remoto el término de treinta y un (31) días. Ciertamente, hemos sostenido que un exceso de treinta (30) días de su faz es irrazonable. Pueblo v. Tribunal Superior, 91 D.P.R. 19, 29 (1964).

**Sin embargo, ello nunca ha significado que estemos ante un término de caducidad o de férrea rigurosidad matemática.** La razón de ser de esta norma es que el magistrado al evaluar si autoriza o no el allanamiento, debe concluir si razonablemente existe todavía material delictivo (en autos, heroína) dentro de la residencia o estructura en cuestión.

**En las circunstancias particulares del caso de autos, en que no está en discusión la veracidad de las observaciones del agente Torres Torres, un (1) solo día en exceso no justifica caracterizarlo automáticamente de remoto.**

En resumen, los hechos expuestos en la declaración jurada del agente Torres Torres fueron suficientes. Al igual que los tribunales de Instancia y Circuito, en ausencia de otra prueba, en esta etapa debimos sostener la admisibilidad en evidencia de la heroína incautada.


ANTONIO S. NEGRON GARCIA
Juez Asociado