EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Gisselle Adams Figueroa<br><br>Peticionaria | Certiorari<br><br>2007 TSPR 40<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2007-28

Fecha: 9 de marzo de 2007

Tribunal de Apelaciones:

        Región Judicial de Ponce-Panel IX

Juez Ponente:

        Hon. Ándres Salas Soler

Abogada de la Parte Peticionaria:

        Lcda. Ana E. Andrade Rivera

Abogado de la Parte Recurrida:

        Lcdo. Salvador J. Antonetti Stutts
        Procurador General

Materia: Supresión de Evidencia / Orden de Allanamiento

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                    CC-2007-28     CERTIORARI

Gisselle Adams Figueroa

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 9 de marzo de 2007

Se confirma la resolución denegatoria emitida por el Tribunal de Apelaciones en el presente caso por estar igualmente dividido el Tribunal.

La presente Sentencia deberá ser notificada por fax, teléfono y por la vía ordinaria.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton coincide con la Opinión disidente emitida en cuanto a que, en las circunstancias particulares de este caso, procede la supresión de la evidencia obtenida mediante el registro efectuado. En vista de ello, expediría el recurso presentado y ordenaría la paralización de los procedimientos en instancia. El Juez Asociado señor Rebollo López emitió Opinión disidente. La Juez Asociada señora Fiol Matta expediría.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                      CC-2007-28      CERTIORARI

Gisselle Adams Figueroa

    Peticionaria

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 9 de marzo de 2007

El hogar es la más importante y sagrada posesión que tiene un ser humano. En ese hogar, de ordinario, reside el matrimonio, sus hijos, y, en ocasiones, hasta sus progenitores, esto es, su familia más cercana. En el <u>hogar</u> la persona guarda, y cuida, sus "tesoros" más preciados --tales como fotografías, libros y otros recuerdos de su juventud, de sus estudios y de sus viajes, entre otros-- los cuales, en la mayoría de los casos, tienen un gran valor sentimental.

Siempre hemos sido celosos guardianes de la inviolabilidad del hogar; quizás porque hemos tenido la oportunidad --por razón de los cargos que hemos ocupado-- de observar una residencia

luego de que agentes del orden público han realizado un registro y allanamiento por una orden emitida a esos efectos. Hemos visto, con nuestros propios ojos, la condición caótica en que la residencia queda después del registro; por ello, quizás, somos los que estamos en mejor posición de poder apreciar y valorar, en toda su dimensión, la verdadera y gran importancia que tienen, para nuestros conciudadanos, las disposiciones del Artículo II, Sección 10, de la Constitución del Estado Libre Asociado de Puerto Rico, la cual establece, en lo pertinente, que:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> ....
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. (Énfasis suplido.)

Este precepto constitucional de la más alta jerarquía consagra, repetimos, uno de los derechos más valiosos del ciudadano, cual es, la inviolabilidad de su hogar. Pueblo v. Santiago Avilés, 147 D.P.R. 160 (1998). El mismo tiene el propósito fundamental de proteger a la persona y sus pertenencias pero, sobre todo, la intimidad de su hogar

frente al posible abuso de poder de parte del Estado. Pueblo v. Luzón, 113 D.P.R. 315 (1982).

Precisamente por tratarse de un derecho de tan alta jerarquía, y con el propósito de evitar al máximo ese posible abuso del poder de parte del Estado, es que los forjadores de nuestra Constitución entendieron procedente interponer, en esta situación, la figura imparcial del juez entre los agentes del Estado y la ciudadanía, Pueblo v. Calderón Díaz, 156 D.P.R. 549 (2002), exigiendo que antes de que se pueda llevar a cabo el registro y allanamiento del hogar de un ciudadano, tiene que haber una determinación, de parte de un magistrado, de que existe causa probable para la expedición de una orden de registro contra la misma.[1]

Como es sabido, el término de "causa probable", utilizado en la antes transcrita Sección 10 del Artículo II de nuestra Constitución, es sinónimo del término "motivos fundados", utilizado en nuestro ordenamiento jurídico en relación con la emisión de una orden de arresto. Pueblo v. Calderón Díaz, ante. "El concepto de motivos fundados se ha definido como aquella información y conocimiento que llevan a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, ....". Pueblo v. Martínez Torres, 120 D.P.R. 496 (1988). Dicho de

---

[1] Igual exigencia se establece bajo la Cuarta Enmienda de la Constitución de los Estados Unidos, la cual es aplicable a Puerto Rico. Torres v. P.R., 442 U.S. 465 (1979).

otra forma, los criterios rectores para determinar si los hechos justifican la expedición de una orden de allanamiento son la probabilidad y la razonabilidad. Véase: Pueblo v. Camilo Meléndez, 148 D.P.R. 539 (1999).

De otra parte, la Regla 234 de las de Procedimiento Civil establece, en lo pertinente, que:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
> (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
> (b) Que la orden de allanamiento o registro es insuficiente de su propia faz.
> (c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.
> (d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.
> (e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.
> (f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.
> . . . . . . . . . . . . . . . . . . . . . . . . .
> . . . . . . . . . . . . . . . . . . . . . . . . .

En el presente caso resulta, cuando menos, desconcertante e incomprensible como integrantes de este Tribunal se nieguen a revisar la denegatoria de la Sala Superior de Ponce del Tribunal de Primera Instancia --avalada por el Tribunal de Apelaciones-- de una moción de supresión de evidencia que ante el foro primario radicara la aquí peticionaria Gisselle Adams Figueroa.

Utilizamos la frase "desconcertante e incomprensible" debido a que la _insuficiencia_ de la declaración jurada que dio base a la expedición de la orden de registro y allanamiento en controversia en el presente caso es de tal _magnitud_ que la misma "salta a la vista y hiere la retina". _In re_ Roldán González, 113 D.P.R. 238, 242 (1982).

De hecho, a nuestro humilde juicio, la única explicación posible para dicha actuación es que tanto el tribunal de instancia, como el foro apelativo intermedio e integrantes de este Tribunal han echado a un lado el requisito constitucional de "causa probable" para la expedición de una orden de allanamiento y operan bajo la acomodaticia y desatinada creencia, o teoría, de que si el registro realizado produce evidencia delictiva, el mismo es legal, independientemente de la inexistencia de "causa probable" al ordenarse el allanamiento.

Actuaciones como la antes mencionada --las cuales gozan de alguna popularidad entre ciertos sectores de la ciudadanía, por cuanto dan la impresión de ayudar en la persecución del crimen-- son las que, en definitiva, afectan y empañan la imagen y reputación de este Tribunal. Estas actuaciones, ciertamente, causan desconcierto, inestabilidad y confusión a nivel de instancia y en la clase togada del País. Llega un momento en que nadie sabe a qué atenerse respecto a cuáles deben ser las normas de derecho que rigen en nuestra jurisdicción.

I

Conforme surge de la "orden de allanamiento", emitida por una Juez Municipal de la Región Judicial de Ponce el 8 de agosto de 2002, ante dicha magistrado comparecieron dos personas, a saber, el Sr. Pedro Juan Méndez Guzmán y el Policía José R. Pérez Almodóvar. El primero de ellos declaró, en síntesis y en lo pertinente, que era hijo de Pedro Juan Méndez Romero; que su padre desapareció el domingo 28 de julio de 2002; que la última vez que vio a su padre fue ese mismo día, como a las 8:30 p.m., en el balcón de la casa de Robin[2], hablando con la esposa de éste, sita dicha casa en el Barrio La Vega de Villalba, Puerto Rico; que al no regresar su padre a la casa y siendo las 10:30 de la noche, salió a buscarlo --pasando, incluso, por el lado de la casa de Robin-- pero no lo encontró; que entendía que su padre esa noche tenía sobre su persona la suma de $1,700; que el cadáver de su padre apareció, en un pequeño barranco, el 5 de agosto de 2002; y que dicho barranco estaba a una distancia de ciento cincuenta pies de la casa de Robin.

El Agente Pérez Almodóvar declaró que fue notificado el 5 de agosto de 2002 de la aparición del cuerpo de una persona, en avanzado estado de descomposición, que fue identificado como Pedro Juan Méndez Romero, en el Barrio

---

[2] Robin A. Rivera, dueño de la casa mencionada, era para esa fecha el esposo y/o compañero de la acusada peticionaria Gisselle Adams Figueroa.

La Vega de Villalba, Puerto Rico; que el cuerpo del occiso estaba en un barranco, cerca de una casa perteneciente a Robin Rivera Torres, quien vivía con Gisselle Adams Figueroa; que el cuerpo tenía signos de violencia; que no se encontró dinero ni propiedad alguna del occiso; <u>y que solicitaba que se expidiera una orden de registro y allanamiento contra la casa antes mencionada "para poder ocupar [en dicha residencia] dinero, cartera, documentos personales propiedad del occiso, don Pedro Juan Méndez Romero, para el esclarecimiento de este asesinato…"</u>.

## II

Procede, en este momento, que <u>recordemos</u> que conforme este Tribunal ha resuelto --véase <u>Pueblo</u> v. <u>Camilo Meléndez</u>, ante-- los <u>criterios rectores</u> para determinar si los hechos justifican la expedición de una orden de allanamiento <u>son la probabilidad y la razonabilidad</u>.

Con ello en mente, procede que nos preguntemos: ¿qué prueba sostiene la <u>probabilidad razonable</u> de que el occiso Méndez Romero hubiera sido asesinado en la residencia en controversia y luego su cuerpo fuera llevado al barranco donde fue encontrado? <u>Ninguna</u>. ¿Qué prueba sostiene la <u>probabilidad razonable</u> de que los efectos personales del occiso Méndez Romero se encontraran en la casa allanada, ocho días después de que éste desapareciera? <u>Ninguna</u>. ¿Qué prueba sostiene la <u>probabilidad razonable</u> de que el occiso fuera asesinado en el mismo barranco donde su cuerpo fue

encontrado? <u>Ninguna</u>. ¿Qué prueba sostiene la <u>probabilidad razonable</u> de que el occiso fuera asesinado en algún otro lugar del pueblo de Villalba y luego su cuerpo fuera traído de vuelta, esa misma noche, al Barrio La Vega y abandonado en el barranco? <u>Ninguna</u>. ¿Qué prueba sostiene la <u>probabilidad razonable</u> de que el occiso fuera asesinado esa noche en algún lugar del pueblo de Villalba y su cuerpo fuera traído, pasado algún tiempo, al Barrio La Vega y dejado en el barranco para que fuera descubierto? <u>Ninguna</u>.

Todos esos <u>posibles</u> escenarios son, precisamente, mera e igualmente <u>posibles</u>. Ninguno de ellos prevalece sobre el otro. El <u>mero hecho</u> de que el hijo del occiso observara a su padre hablando, en horas de la noche, con la acusada en el <u>balcón</u> de la casa en la cual ella residía con su esposo, ¿hace más <u>probable</u>, o razonable, la teoría de que Méndez Romero fue asesinado en dicha casa? <u>La contestación en la negativa es mandatoria</u>. Este hecho <u>no</u> constituye los "motivos fundados", requeridos por nuestro ordenamiento jurídico, para la expedición de una orden de allanamiento.

¿No es, igualmente, posible que Méndez Romero, luego de conversar con la peticionaria, siguiera su camino y encontrara la muerte, a manos de personas desconocidas, en otro lugar cercano? Al contestar esta última pregunta, <u>no</u> debemos olvidar que, <u>desafortunadamente</u>, en el Puerto Rico en que hoy vivimos hay cientos de ciudadanos que

encuentran la muerte entrando o saliendo de sus casas o meramente caminando por nuestras carreteras o caminos vecinales.

Imaginemos que el hijo de Pedro Juan Méndez Romero hubiese visto a su padre, esa noche, no sólo hablando con la acusada en el balcón de la residencia de ésta, sino que también conversando con otros tres vecinos de la comunidad en sus respectivos balcones, ¿habríamos expedido una orden de allanamiento por cada residencia visitada por Méndez Romero? La contestación, obviamente, es en la negativa. ¿Por qué? Llana y sencillamente porque ese hecho no constituye "motivos fundados", o "causa probable", para expedir una orden de allanamiento en nuestra jurisdicción.

Podríamos continuar argumentando *ad infinitum*. No lo creemos necesario. Resulta inescapable la conclusión a los efectos de que la prueba que tuvo ante sí la magistrado que emitió la orden de allanamiento <u>es insuficiente en derecho</u>, esto es, la orden de allanamiento <u>nunca debió ser expedida</u>.

En resumen, en nuestra jurisdicción <u>no</u> puede ordenarse el registro y allanamiento de una casa a base del <u>mero hecho</u> de que una persona fue encontrada muerta cerca de esa casa y que fue vista, ocho días antes, hablando con un residente en el balcón de la casa.

Los que le dan la espalda, e ignoran, los mandatos de nuestra Constitución deberían recordar las siguientes palabras del filósofo alemán Martin Niemoller:

En Alemania, los nazis primero persiguieron a los comunistas, pero yo, como no era comunista, no protesté. Más tarde vinieron tras los judíos pero como yo no era judío, no protesté. Luego, comenzaron a perseguir a los miembros de las uniones obreras, mas como yo no estaba unionado, no protesté. Más adelante la persecución se tornó contra los católicos, pero siendo yo protestante, no tuve por qué protestar. Luego, vinieron por mí. Para entonces ya no había nadie que protestara por ninguno otro. Asegurémosno de que tal cosa no vuelva a suceder. (Énfasis suplido).

Yo, hoy, protesto y disiento.


                              FRANCISCO REBOLLO LÓPEZ
                                    Juez Asociado